CHARLES M. MOULDER *v.* STATE OF INDIANA.

[No. 472A180. Filed November 30, 1972.]

*Harold Abrahamson, Crumpacker, Abrahamson & Reed,* of Hammond, for appellant.

*Theodore L. Sendak,* Attorney General, *John McArdle,* Deputy Attorney General, for appellee.

### STATEMENT ON THE APPEAL

STATON, J.—Charles M. Moulder was tried before a jury upon an indictment charging him with second degree murder. The jury found him guilty of involuntary manslaughter. He was sentenced to the Indiana State Prison for a term of not less than one nor more than ten years.[1]

The day before Charles M. Moulder's jury trial, June 15, 1971, he mentioned to the sheriff that the prosecutor had refused to take a plea of manslaughter. The next day during his jury trial, the sheriff testified to Moulder's statement regarding the prosecutor's refusal to accept Moulder's guilty plea to manslaughter. This testimony was received over the

---

1. IC 1971, 35-13-4-2; Ind. Ann. Stat. § 10-3405 (Burns 1972 Supp.).

objection of Charles M. Moulder's attorney. Whether the trial court committed reversible error by receiving in evidence the sheriff's testimony concerning the plea bargaining communication is the only question which will be discussed in this opinion.[2] In our opinion, we hold that the trial court committed reversible error when it admitted the sheriff's testimony regarding a communication involved in the plea bargaining process.

STATEMENT OF THE FACTS: Charles M. Moulder and his wife had been drinking most of the day on February 27, 1971. Their fifteen year old son returned home from the skating rink with some friends around 10:30 o'clock P.M. His parents were engaged in an argument. Charles M. Moulder went into the bedroom of his son and told him that he intended to kill his mother and himself. Later in the night, Charles M. Moulder's brother was awakened by gunshots. He found Charles M. Moulder on the floor next to a pistol and his wife in a chair. Both had been shot. Charles M. Moulder's wife was dead.

Charles M. Moulder was indicted and charged with second degree murder. During the jury trial, the prosecutor asked these questions of the sheriff who answered them over the objection of Charles M. Moulder's defense counsel:

"Q. During your investigation, as a matter of fact, as early as yesterday, you had a conversation with the defendant here, didn't you?

"A. Yes.

"Q. What did he tell you?

---

2. Charles M. Moulder raised a second issue in his "Motion to Correct Errors" contending that the trial court erred in depriving him of access to the Grand Jury testimony of his son. The question need not be considered since we are reversing the trial court for admitting into evidence the sheriff's testimony regarding the communication involved in the plea bargaining process. *Lash* v. *Wright* (1972), 153 Ind. App. 299, 287 N.E.2d 255. For recent cases dealing with the right to obtain pre-trial discovery see *Sargent* v. *State* (1972), 153 Ind. App. 430, 287 N.E.2d 795 and *Auer* v. *State* (1972), 154 Ind. App. 164, 289 N.E.2d 321.

"MR. BOWER: Well, I will object, I will object to that, your Honor. Now, this is, this is quite obvious, after the time, there is no showing of waiver here, and what type of trickery that, after the trial is in process, that the Prosecution is up to in trying to obtain additional evidence from the defendant—

"THE COURT: There is no, there is no reason to accuse the Prosecution of trickery, at all. Make an objection, and the Court will rule on it.

"MR. BOWER: I think I have, your Honor.

"THE COURT: Well, state it. The Court hasn't heard any yet.

"MR. BOWER: Well, your Honor, I would object to this on the basis that it's been taken from the defendant. Counsel has been employed in this case for three months. He was not notified of any attempted interrogation of the defendant. And if not, the defendant was not warned of his rights and was not known that this particular comment could possibly be used against him, and there is additional, no—I don't know of its relevancy right now. I have never, it's never been produced to me prior to this trial, your Honor, and the Prosecution has been under an order to do so. Any statements of the defendant that are going to be used.

"MR. VANN: Talking about a statement he made yesterday, after he had been defended and advised of his rights.

"THE COURT: He's been fully advised of his constitutional rights. You may answer. The Court did it himself.

"Q. What did he tell you yesterday?

"MR. BOWER: I will object for the same reasons, your Honor.

"THE COURT: I heard the objection and overruled it.

"Q. Did you have a conversation with him? What did he tell you? Mr.—the defendant.

"A. I have a conversation with him all the time.

"MR. BOWER: Well —

"A. That —

"MR. BOWER: Your Honor, this is highly—I object again.

"THE COURT: You, now you only object once, and the Court's only going to rule once, and the Court has ruled, you may answer.

"A. He stated to me that, 'You would not take—on, going on to the jail, right? He stated to me that, 'You wouldn't take a plea of manslaughter?'

"Q. Did he indicate he was—what did he tell you?

"MR. BOWER: Well, your Honor, this I will object and move for a mistrial on it. This is highly prejudicial to the defendant. This is a violation of—

"THE COURT: Now, we are not arguing to the jury. The motion is overruled.

"A. What's that question again?

"Q. What did he say? Just tell you, what you said.

"A. He said, that, 'He would not'—'You would not take a plea of manslaughter?'

"Q. Did he indicate that he wanted to?

"MR. BOWER: Objection, the question is leading, calls for the conclusion of the witness and the frame of mind of the defendant.

"THE COURT: The—if there are statements made they are always admissible, of this nature.

"A. I don't believe he indicated he would or wouldn't at that time.

"Q. That's what he told you yesterday.

"A. Yes."

STATEMENT OF THE ISSUE: The only issue to be discussed in this opinion is whether it is reversible error to receive in evidence any testimony regarding the plea bargaining process where the defendant has not subsequently pleaded guilty.

Charles M. Moulder's defense counsel has chosen to express the contention of error as follows in his motion to correct errors:

"(5) Uncorrected error of law occurring and properly raised in the proceedings during the trial in denying defendant's motion for a mistrial after the prosecutor had elicited testimony concerning a conversation between Sheriff Mullen and the defendant (as set forth in paragraph 4 hereinabove) concerning whether or not defendant would enter a guilty plea to involuntary manslaughter and whether or not the prosecutor would accept such a plea. The Court

made no effort to correct the error but summarily overruled the motion with the comment 'Now we are not arguing to the jury.' Notwithstanding the subsequent testimony of defendant that he did not want to enter such a plea, the defendant's rights were violated and he was denied a fair trial when the prosecutor, through these means, planted in the minds of the jury the idea that defendant's counsel had advised him to plead guilty to involuntary manslaughter."

STATEMENT ON THE LAW: The privilege status of communications relating to attempted compromise of civil litigation and the attempted compromise known as plea bargaining for a reduction of punishment in criminal prosecutions by the State has its roots in well-established public policy.[3] The growth of the public policy in each field of law, criminal and civil, has been different. In the civil field, the public policy growth has been unswerving, consistent and unequivocal. The rule of law in civil cases is that communications and acts of a party in an attempt to compromise the claims of another party in order to settle the lawsuit are not admissible in evidence. Such communications are privileged.[4] In contrast, the criminal field has experienced a schizoid public policy growth.[5] Communications

---

3. A typical example of the philosophy of the courts is set forth in *State v. Wideman* (1904), 68 S.C. 119, 46 S.E. 769, 770:

". . . Evidence of an offer to compromise is not inadmissible in a criminal case as opposed to public policy, because the public is not concerned in the private compensation for losses resulting from crime, but rather in the public punishment of crime as an offense against society. . . ."

4. See *Northern Indiana Steel Supply Company, Inc. v. Chrisman* (1965), 139 Ind. App. 27, 204 N.E.2d 668; 99 A.L.R.2d 737 and 15 A.L.R.3d 13.

5. In cases involving attempts to compromise criminal prosecutions, not involving plea bargaining, the courts seem to take one of two approaches:

1) If the attempt to compromise the criminal prosecution was illegal *per se*, then evidence of such attempted compromise was admissible; or,

2) Even if the attempt to compromise was not illegal *per se*, the courts would allow testimony of attempted compromises because public policy in that State opposes compromises in criminal cases.

See *Commonwealth v. Reibstein* (1926), 257 Mass. 436, 154 N.E. 271; *State v. Slane* (1935), 48 Wyo. 1, 41 P.2d 269; *State v. Bruemmer* (1925),

by a criminal defendant to compromise the punishment demanded by the State for certain alleged criminal offenses and includable offenses have been treated as confessions,[6] admissions against interest,[7] evidence showing consciousness of guilt[8] or privileged.[9] New mounting case loads and old disposed of cases revisiting the judicial process by way of post-conviction petitions have inundated our criminal courts. This has had a residual effect. It has solidified plea bargaining public policy. Plea bargaining is now an accepted and honorable practice. The majority of our courts now follow the rule that communications relating to plea bargaining in criminal prosecutions are privileged and are not admissible in evidence.[10]

The present case is one of first impression in Indiana. Our courts have never determined the status of such a communication as presented here.

The plea bargaining process is an essential component of the administration of criminal justice. Approximately 80% of all criminal charges are disposed of by resorting to the plea bargaining process.[11] Without it, even a proliferation of additional courts and judges could not adequately fill the vacuum. Chief Justice Burger of the Supreme Court of the United States expressed the need and desirability of the

---

133 Wash. 579, 234 P. 448; *State v. Heath* (1926), 202 Iowa 153, 209 N.W. 279; *State v. Hook* (1928), 174 Minn. 590, 219 N.W. 926; and *Christian v. United States* (5th Cir. 1925), 8 F.2d 732.

6. *Carter v. State* (1931), 161 Tenn. 698, 34 S.W.2d 208.

7. *People v. MacCullough* (1937), 281 Mich. 15, 274 N.W. 693.

8. *State v. DeBerry* (1885), 92 N.C. 800; *Christian v. United States, supra.*

9. *Bennett v. Commonwealth* (1930), 234 Ky. 333, 28 S.W.2d 24.

10. As stated in *Commonwealth v. Cohen* (1938), 133 Pa. Super. 437, 2 A.2d 560, 565:

"... [T]he apparent weight of authority [is] against the admissibility of such evidence. ..."

See also: *State v. Hamilton* (1970), 4 Or. App. 214, 476 P.2d 207; *Dean v. State* (1913), 72 Tex.Cr.R. 274, 161 S.W. 974; and *Pugh v. State* (1964), 42 Ala. App. 499, 169 So.2d 27.

11. DonVito, *An Experiment in the Use of Court Statistics* 56 J. AM. JUD. SOC'Y. 56 (1972).

plea bargaining process in *Santobello* v. *New York* (1971), 404 U.S. 257, 92 S. Ct. 495, 498, 30 L. Ed. 2d 427:

". . . The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice. Properly administered, it is to be encouraged. If every criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities.

"Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pre-trial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pre-trial release; and by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned. See *Brady* v. *United States*, 397 U.S. 742, 751-752, 90 S. Ct. 1463, 1470-1471, 25 L. Ed. 2d 747 (1970)."

Consciousness of guilt, confession and admission against interest have no place in plea discussion or plea bargaining. Plea bargaining communications are for the sole purpose of reducing the punishment to be given the defendant. All other considerations or interpretations detract from its purpose and erode its usefulness. Many considerations are involved in the plea bargaining communication that are not admissible in evidence. Certainly the State's ability to prove guilt is a consideration. Other considerations may be: seriousness of the crime; criminal record of the defendant; defendant's willingness to testify for the State against accomplices; unresolved legal questions such as a claim by the defendant that there was a bad arrest or a questionable search and seizure; unreliable State witnesses; a tainted identification of the defendant giving rise to a *Wade-*

*Gilbert* problem;[12] legal questions surrounding the admissibility of certain evidence needed to prove the *corpus delicti;* length of the trial; difficulty of trial preparation; time available for preparation as well as available deputies; cold or stale evidence resulting from many delays which makes a conviction questionable; a hold on the defendant from another jurisdiction; and many, many other considerations which we do not deem it necessary to go into here.

The Supreme Court of Missouri dealt with a plea communication which was admitted into evidence in *State* v. *Able* (1928), 320 Mo. 445, 8 S.W.2d 55, 56. The defendant had been indicted for murder and offered to plead guilty in return for a five year sentence. This offer was refused by the prosecutor. The Supreme Court of Missouri held that:

> "The offer by the defendant was not an extra-judicial confession; it was an attempted negotiation for a compromise, not of a felony, but of the punishment to be inflicted. The defendant was charged with a capital offense; he stood in the shadow of the gallows. His offer was not inconsistent with a plea of not guilty. By his offer he, in effect, said he would plead guilty on condition that his punishment would be assessed at imprisonment in the penitentiary for five years rather than take the chance of the death penalty. This he had a right to do. [citation omitted]. . . .

> \* \* \*

> "If this had been an offer to compromise a civil action, it would have been privileged. We can see no good reason why it should not be so considered in a criminal action. The offer to plead guilty should have been accepted and sentence passed upon it, or it should have been rejected, and 'never have been heard of again.' The prosecuting attorney should not have been allowed to reject the conditional offer and afterwards use it against the defendant at the trial." Also see: *State* v. *Hamilton* (1970), 4 Or. App. 214, 476 P. 2d 207; *Dean* v. *State* (1913), 72 Tex.Cr.R. 274, 161 S. W. 974; and *Pugh* v. *State* (1964), 42 Ala. App. 499, 169 So. 2d 27.

---

12. *U.S.* v. *Wade* (1967), 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 and *Gilbert* v. *California* (1967), 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178.

The privilege given to plea bargaining communications should not be extended to include all communications made under the guise of plea bargaining. One of the essential concerns of the early minority courts was that the rule might be extended to protect communications made for an unlawful purpose such as compounding a crime or obstructing justice. The rule does not extend this far. In *Bennett* v. *Commonwealth* (1930), 234 Ky. 333, 28 S.W.2d 24, 27, the Court of Appeals of Kentucky cautioned:

> "The rule here established and the idea of immunity from disclosure, however, ought *never* to be extended to offers or communications made for an unlawful purpose, such as compounding a crime or obstructing justice. The interest of public justice requires that no such shield from merited exposure shall be interposed to protect a person who takes [tells] counsel how he can safely commit a crime, or endeavors to thwart the administration of justice." (Our Emphasis).

The character of the communication is the test to be applied. The communication must have as its ultimate purpose the reduction of punishment or other favorable treatment from the State to the defendant.

There should be no question about the rule extending to guilty pleas subsequently withdrawn. In *Kercheval* v. *U.S.* (1927), 274 U.S. 220, 47 S. Ct. 582, 71 L. Ed. 1009, the prosecution had introduced into evidence a certified copy of a prior plea of guilty subsequently withdrawn. The Supreme Court of the United States reversed the conviction and stated:

> ". . . Its introduction may have turned the scale against him. 'The withdrawal of a plea of guilty is a poor privilege if, not withstanding its withdrawal, it may be used in evidence under the plea of not guilty.' . . .
>
> \* \* \*
>
> "We think the weight of reason is against the introduction in evidence of a plea of guilty withdrawn on order of court granting leave and permitting the substitution of a plea of not guilty." *Kercheval, supra,* 274 U.S. at 224-225.

The Minnesota Supreme Court was confronted with a very similar problem as the one here under consideration in *State* v. *McGunn* (1940), 208 Minn. 349, 294 N. W. 208, 209.

The court acknowledged that:

"More difficult is the problem raised concerning the admission of evidence of defendant's proposed plea of guilty. . . . It is not a former plea of guilty with which we have to deal in the case at bar, but merely a proposal to plead guilty on the promise or recommendation of a suspended sentence. Can it be said that the above reasoning [withdrawal of the former plea of guilty by leave of the court annuls the plea and it ceases to be evidence] does not apply with equal force to the case where the defendant merely makes an offer to plead guilty, as to the case where the defendant actually makes such a plea and later, by leave of the court, withdraws it? We think not. If such were the result, the defendant who merely offered to plead guilty would be in a worse plight than the defendant who actually pleaded guilty, withdrew his plea and substituted another.

\* \* \*

"In the case before us we are dealing with a conditional offer to plead guilty, made before the court and not accepted by it, and we think this should have the same treatment as a plea of guilty subsequently withdrawn."

We think that it is further worthy of note that the American Bar Association has substantially adopted this rule in its Minimum Standards for Criminal Justice, Standard 3.4:

"3.4 Discussion and agreement not admissible.
"Unless the defendant subsequently enters a plea of guilty or nolo contendere which is not withdrawn, the fact that the defendant or his counsel and the prosecuting attorney engaged in plea discussions or made a plea agreement should not be received in evidence against or in favor of the defendant in any criminal or civil action or administrative proceedings."

DECISION OF THE COURT: Any communication relating to the plea bargaining process is privileged and inadmissible

in evidence unless the defendant has subsequently entered a plea of guilty which has not been withdrawn. The judgment of the trial court should be and the same hereby is reversed with instructions to grant Charles M. Moulder, the defendant, a new trial.

Hoffman, C.J. and Sharp, J., concur.

NOTE.—Reported at 289 N.E.2d 522.