FRANK WRIGHT, JR. *v.* STATE OF INDIANA.

[No. 776S199. Filed June 10, 1977. Rehearing denied July 26, 1977.]

*Roger D. Reason, Dickmann, Dickmann & Reason,* of Greenfield, for appellant.

*Theodore L. Sendak,* Attorney General, *Susan J. Davis,* Deputy Attorney General, for appellee.

PIVARNIK, J.—The Appellant, Frank Wright, Jr., was convicted on December 11, 1975, of the second degree murder of

Kandy Kay Chadwick, the twenty-one month old child of the Appellant's girlfriend, Donna Chadwick. (Donna Chadwick was also convicted of second degree murder. Her conviction was affirmed by this court in *Chadwick* v. *State*, (1977) 266 Ind. 305, 362 N.E.2d 483.) The jury's verdict imposed a sentence of life imprisonment. The Appellant filed his motion to correct errors on March 9, 1976. This motion was denied on April 7, 1976.

I.

In order to set out the facts of this case conveniently, we consider first the contention of the Appellant that the evidence at trial was insufficient to support the jury's verdict. The Appellant first contends in this argument that a statement given by him to police, upon which his conviction was largely based, was erroneously admitted into evidence because there was insufficient evidence independent of the statement to establish *corpus delicti.*

In order to admit a confession into evidence, independent evidence of the *corpus delicti* must be adduced. *Burton* v. *State,* (1973) 260 Ind. 94, 292 N.E.2d 790. "A dead body alone is not proof of the corpus delicti in a homicide case ; but an identified dead body with marks of violence thereon or surrounding circumstances that would indicate the deceased did not die from natural causes establishes prima facie that a homicide has been committed and the corpus delicti." (citations omitted) *Brown* v. *State,* (1958) 239 Ind. 184 at 190, 154 N.E.2d 720 at 722.

The evidence at trial revealed that on Sunday, July 20, 1974, at approximately 11:59 a.m., police were summoned to the Indianapolis home of Donna Chadwick. There they found the body of Chadwick's infant daughter, Kandy Kay Chadwick. Medical examination revealed multiple bruises, cuts and abrasions: some eleven cuts and bruises of the head; some ten to fifteen bruises and abrasions of the chest and abdomen; bruises on the left side of the back; small bruises of both arms and older bruises of the legs.

Expert testimony indicated that the bruises of the abdomen, chest, and head were "recent", within twenty-four to thirty-six hours of the time of death. Internal examination of the decedent revealed bleeding about the right adrenal gland, hemorrhage of the liver, and bruising of the fatty tissue in the middle of the abdomen. Examination of the head showed bruising generally over the entire skull. The immediate cause of death was determined to be craniocerebral injury, injury to the brain caused by blows of sufficient impact to also fracture the child's skull.

Expert testimony established that these injuries could not have been caused by a fall. The instrument of death was something blunt and fairly soft. The fatal injuries were a "multiple blow structure" requiring "considerable" force and were sustained "within two to three days at the most" of the time of death. We think this testimony regarding the extent and nature of the injuries in this case adequately established the *corpus delicti*, that a homicide had been committed.

The Appellant presents three other challenges to the sufficiency of the evidence:

1) Lack of "killing"—this contention asserts that the evidence did not establish that a death occurred by criminal means and was a "result of the specific act of the accused."

2) Lack of intent—this contention asserts that the evidence failed to show that the Appellant killed the decedent "purposely", required for a conviction of second degree murder.

3) Lack of malice—this contention asserts that the evidence did not show that the Appellant killed the decedent "maliciously", also required for a conviction of second degree murder.

We have already noted that *prima facie* evidence of a homicide was presented. Direct evidence of the acts of the Appellant was contained in a statement given by him to police. In that statement the Appellant admitted hitting the decedent in the stomach with his open hand, and admitted hitting her

head and gouging her stomach with a stick eight inches long, one-quarter inch wide, and one-half inch thick. The baby grew sicker, revealing symptoms medical testimony described as symptomatic of the brain injury from which she died. The Appellant did not take the infant to a doctor. Medical testimony further established that the injuries from which the child died could possibly have been successfully treated.

The jury also had before it evidence that the Appellant had been at the scene of the crime and had fled. Such evidence may be considered as circumstantial evidence of guilt. *Frith* v. *State*, (1975) 263 Ind. 100, 325 N.E.2d 186. Presence at the scene in connection with other circumstances tending to show participation in the crime may be sufficient to sustain a conviction. *McGill* v. *State*, (1969) 252 Ind. 293, 247 N.E.2d 514.

In looking at the other two elements raised by the Appellant, intent and malice, *Shackelford* v. *State*, (1976) 264 Ind. 698, 349 N.E.2d 150, offers a pertinent discussion:

> "[A] barehanded beating or a stomping may permit the jury to draw an inference of purpose and malice. This is especially true if the victim is weaker than his assailant or if the assailant continues to beat or kick the victim after he has fallen and is clearly no threat to the attacker. *McKinstry* v. *State*, (1975) [264] Ind. [29], 338 N.E.2d 636; *Covington* v. *State*, (1975) [262] Ind. [636], 322 N.E.2d 705; *Corbin* v. *State*, (1968) 250 Ind. 147, 234 N.E.2d 261; *Stice* v. *State*, (1949) 228 Ind. 144, 89 N.E.2d 915; Annot., 22 A.L.R.2d 854 (1952). The circumstances in which the homicide took place and the method of killing are common types of evidence tending to show state of mind. *McKinstry* v. *State, supra.*
>
> 'An act is done purposely, if it is willed, is the product of a conscious design, intent or plan that it be done, and is done with an awareness of probable consequences.' An act is done with malice when it is done with 'any evil design in general.' In homicide, a purposeful killing is done with malice if it is done neither in self-defense nor in the heat of passion induced by sufficient provocation. *McKinstry, supra*, at 640, and cases therein." 349 N.E.2d at 154.

The Appellant's argument asserts that various portions of his statement demonstrated "interest and concern for the

decedent," that it showed immaturity or lack of education, but no intent to kill. This Court cannot, however, weigh the evidence. We look at only the evidence most favorable to the State and the reasonable inferences to be drawn from that evidence. A verdict will not be disturbed if there is substantial evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt. *Young* v. *State,* (1975) 264 Ind. 14, 332 N.E.2d 103; *Jackson* v. *State,* (1971) 257 Ind. 477, 275 N.E.2d 538. We find the evidence recited above to be sufficient to sustain the verdict in this case.

## II.

It is also contended that the trial court erred in denying a defense motion for discharge based upon Ind. R. Crim. P. 4(B). That rule reads in pertinent part:

> "(B) (1) *Defendant in jail—Motion for early trial.* If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within such period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar. Provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as set forth in subdivision (A) of this rule."

The Appellant's motion was properly denied under these provisions.

The Appellant's motion for speedy trial was filed on June 10, 1975. On June 18, 1975, a plea of not guilty by reason of insanity, a motion for mental examination, and a motion for change of venue were filed. The change of venue was perfected on June 25 and the requested mental examinations were conducted. On September 9, 1975, the Appellant requested that his competency hearing be continued. On Septem-

ber 18, 1975, the plea of not guilty by reason of insanity was withdrawn.

The Appellant's "motion for dismissal and discharge" was filed on September 26, 1975. It is clear, however, that delay of his trial from June 18 to September 18 is directly attributable to his insanity plea and to his motion for change of venue. The running of the seventy day limit under Ind. R. Crim. P. 4(B) was tolled for this period of delay and had not run when the Appellant's motion for discharge was made.

It is asserted by the Appellant that his plea of insanity and the motions which accompanied its filing could not cause delay chargeable to him because they were not filed by his attorney of record. The record confirms that the plea and motions were filed by that attorney's partner. This Court has written that an attorney cannot delegate his authority. *Clegg* v. *Baumberger,* (1866) 110 Ind. 536, 9 N.E. 700. However, after these allegedly unauthorized acts the Appellant submitted to psychological examinations, moved for continuance of his competency hearing, and later withdrew his insanity plea. At no time was any objection to the entry of the plea made. Under traditional agency analysis, the Appellant's silence and acceptance of the benefits attaching to the purportedly unauthorized acts ratified them. 1 I.L.E. *Agency* § 121 *et seq.* (1957). The Appellant's failure to voice objection also precludes him from raising the issue for the first time on appeal. *Davis* v. *State,* (1972) 258 Ind. 533, 282 N.E.2d 805.

The Appellant also urges error here on the basis of a prosecution motion for continuance filed on September 26, 1975, three days prior to the trial date then set. Our attention is drawn to the provision of Ind. R. Crim. P. 4(A), incorporated by reference in Ind. R. Crim. P. 4(B), which states that when congestion of the court calendar will not permit trial within the prescribed time the prosecutor "shall make such statement in a motion for continuance not later than ten (10) days prior to the date set for trial." If such a motion is filed less than ten days prior

to trial, "the prosecuting attorney shall show additionally that the delay in filing the motion was not the fault of the prosecutor." On its face, this provision applies only to motions for continuance which are based upon court congestion and which would delay trial beyond the prescribed time period. Neither of these circumstances occurred here. The October 14 trial date set was within the seventy day period. The motion for continuance was based upon the need for more time for trial preparation. The Appellant's contention that the prosecution motion for continuance was erroneously granted, because it did not comply with these rule provisions, is thus without merit.

## III.

The Appellant was convicted primarily upon the strength of his statement given to police on July 21, 1974. Police had been notified of the death of the decedent on the morning of the previous day, Saturday, July 20, 1974. Having heard on local radio that he was wanted by Indianapolis police, the Appellant contacted police on the evening of July 21 and arranged his surrender. The Appellant met police at a shopping center at about 10:40 p.m., was arrested, and completed his statement at about 11:55 p.m.

The Appellant asserts that this statement was not voluntarily and knowingly given and therefore erroneously admitted into evidence for several reasons: 1) the Appellant had not eaten or slept sufficiently before making his statement; 2) the Appellant had requested his attorney, who was not present during the questioning session; 3) the Appellant was deceived by police officer Thomas L. Johnson, who had said he would meet the Appellant alone at the shopping center at which he was arrested by a number of policemen, and who had said he would help locate the Appellant's attorney; 4) the Appellant did not understand, when he gave his statement, that it would be read to the jury or that he was charged with first degree murder. It is

argued in support of this proposition that the Appellant had only an eighth grade education.

Police testifying at the Appellant's suppression hearing contradicted each of these allegations. They stated that the Appellant was offered food and drink, as the Appellant's statement also indicates. They testified further that the Appellant appeared to be in excellent physical condition, was alert and responsive, and was not physically abused. According to this testimony, the Appellant did not request an attorney at any time. Officer Johnson denied making any promise about getting Appellant an attorney as a condition to meeting Appellant. A rights waiver form signed by the Appellant was admitted into evidence. Proper advisements of rights, with acknowledgments of understanding by the Appellant, are included in the statement in question.

"On appeal we do not disturb a trial court's ruling as to the admissibility of a confession based on conflicting evidence except for an abuse of discretion. *Rogers* v. *State,* (1974) [262] Ind. [315], 315 N.E.2d 707; *Cooper* v. *State,* (1974) [261] Ind. [659], 309 N.E.2d 807; *Lewis* v. *State,* (1972) 259 Ind. 431, 288 N.E.2d 138." *Cowell* v. *State,* (1975) 263 Ind. 344, 331 N.E.2d 21 at 23-24. The finding of the trial court here clearly revolved around the credibility of witnesses and, since the resolution of credibility questions is within the province of the trier of fact, we can find no abuse of discretion.

## IV.

The Appellant raises a second contention regarding his statement. He asserts that the trial court erred when it permitted the introduction of portions of the statement which purportedly referred to prior criminal acts. The following portions of the statement are involved (emphasis added):

". . . I started hitting on her and I hit her too hard a couple of times and then I tried to keep her up and for some reason she stayed up and for some reason when we put her back to bed she wouldn't go to sleep so Donna got her

back up and she whipped on her a little bit and that's about it and Sunday the same thing and thats when she got a little sick and everything *and I didn't want to take her to the doctor cause of what they did to me last* [*time*]. . . ."

". . . Well Saturday during the day that's when we noticed she started getting real sick and I said I was scared cause what happened before and I was wanting to take her to a doctor but Donna said no and so I didn't know what else to do I just kept my mouth shut when she started getting sicker so then we put her to bed and she wouldn't go to sleep or nothing and I noticed while she should have been asleep a long time and her bowels just kept on and she wouldn't eat anything *and the next day I wanted to take her to the doctor but Donna said no because of what happened last time* and so I didn't do nothing and when I went out to call the police well *when I got back in she was done gone so I knew I was going to get hung cause that's the way she did before.* . . ."

". . . this morning she suggested to take the baby down to Holy Cross Cemetery down at that dump down there and burying the baby there and I couldn't see that so that's when I went out to make that phone call and when I got back in that's when *it scared me cause I knew what she was going to do like she did before, hang me.* . . ."

". . . I didn't hear it [that he was wanted by the police] till late this afternoon, well I heard it on the news and then *I knew what she had done just like she did before.* I said I went out to call and when I got back she was done gone so I knew I didn't have much of a chance. . . ."

". . . *Well Donna was telling about what trouble I got into last time and everything.* . . ."

". . . *Cause I said Donna she kept reminding me of what trouble I got into last time and I said I got scared and everything.*"

In *Brown* v. *State*, (1953) 232 Ind. 227, 111 N.E.2d 808, this Court held that portions of a confession were erroneously admitted into evidence when they referred to collateral offenses unrelated to the crime for which the defendant was on trial and when those portions could be separated from that part having bearing on the crime charged. Under these conditions, only the part material to the issues at trial was admissible.

We find that the facts of this case are distinguishable from those of the *Brown* decision. The references cited by the Appellant do not necessarily lead to inferences of prior criminal conduct. They relate to the intent and knowledge of the Appellant. Further, they are not easily separated from the rest of the statement. The quotations cited above, even though pulled out of context, still illustrate the difficulty in separating the objected to parts. The emphasized portions are integral parts of the sentences and paragraphs in which they occur. Moreover, we think that their deletion might create a statement even more prejudicial to the Appellant. We can find no error in the admission of the entire statement.

## V.

It is next contended that the trial court erred when final arguments, without permission or stipulation by the defense, were not recorded. The record reveals that no timely objection on this basis was put to the trial court. This issue has not been preserved for our review. *Brown* v. *State,* (1975) 264 Ind. 40, 338 N.E.2d 498; *James* v. *State,* (1974) 261 Ind. 495, 307 N.E.2d 59.

## VI.

The Appellant also urges error in the granting of a prosecution motion *in limine* which prohibited testimony regarding plea negotiations between the State and the defense. It is asserted that the granting of this motion prevented the defense from calling Donna Chadwick as a witness because "prior testimony at her trial would surely be placed into evidence by the State of Indiana and the defendant would be unable to show the jury the true facts and circumstances surrounding her testimony at her trial." It is further asserted that the defendant was effectively prevented from taking the stand himself because the State would introduce his prior testimony from the Chadwick trial. Finally, it is asserted that the defense could not "advise the jury of the State of

Indiana's analysis of the case" by which "the defendant would have received no more than a sentence of not less than fifteen nor more than 25 years."

These arguments are not persuasive. They are speculative and assume a number of propositions unsupported by the record: that Donna Chadwick could have been called as a witness friendly to the defense, and that her testimony would be inconsistent with her prior testimony; that the Appellant would give testimony which could be impeached by his prior testimony; that the State, in its plea negotiations, did not feel a sentence of life imprisonment was appropriate. The first assertion assumes that Donna Chadwick would not have been a hostile witness. The second assumption implies that the Appellant lied at the Chadwick trial. The third assumption is difficult to maintain in the face of the State's indictment of the Appellant for first degree murder.

Our Court of Appeals has addressed the issue posed here:

"[D]istilling the issue here to its simplest terms, it is: *May a Defendant offer plea bargaining testimony in evidence for any reason at trial after entering a plea of not guilty?*

No Indiana case authority speaks to this specific issue. In *Moulder* v. *State*, (1972) 154 Ind. App. 248, 289 N.E.2d 522, the State offered and introduced into evidence testimony which related to plea bargaining negotiations to show the defendant's guilt. This Court held in *Moulder* v. *State, supra,* 154 Ind. App. at 258, 289 N.E.2d at 528:

'any communication relating to the plea bargaining process is privileged and inadmissible in evidence unless the defendant has subsequently entered a plea of guilty which has not been withdrawn.'

The present case is just the reverse. The defense is offering plea bargaining negotiation testimony to show truthfulness and innocence. In *Moulder* v. *State, supra,* we noted the American Bar Association's Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty § 3.4 which states:

'Unless the defendant subsequently enters a plea of guilty or nolo contendere which is not withdrawn, the fact that the defendant or his counsel and the prosecuting attorney engaged in plea discussions or made a plea

agreement *should not be received in evidence against or in favor of the defendant in any criminal* or civil action or administrative proceedings.' (Our emphasis) We adopt this standard as it applies to the present case. We hold that any communication or evidence relating to plea bargaining negotiations offered in evidence by the defendant is inadmissible unless the defendant subsequently enters a plea of guilty which is not withdrawn."

*Hineman* v. *State*, (1973) 166 Ind. App. 293 at 301-302, 292 N.E.2d 618 at 621.

## VII.

The Appellant raises two issues regarding an autopsy report on the decedent which was admitted into evidence at trial: 1) whether the report was inadmissible hearsay evidence; 2) whether it was proper for a physician, other than the author of the report, to draw conclusions about the death of the decedent from the report. We find that the admission of the report and the testimony based upon it was proper.

The record shows that the physician who conducted the autopsy of the decedent died prior to the Appellant's trial. In order to introduce the autopsy report into evidence, the State called as a witness the administrative assistant and chief deputy coroner of Marion County. He testified that he was the keeper of documents in the coroner's office and identified the report in question as a true copy of the autopsy report on the decedent. Under Indiana law, a public record properly authenticated or certified by the keeper of such records is admissible into evidence as an exception to the hearsay rule and the best evidence rule. Ind. Code § 34-1-17-7 (Burns 1973) ; *State* v. *Loehner,* (1973) 159 Ind. App. 156, 304 N.E.2d 835. This was properly done in this case.

The conclusions as to cause of death of the decedent drawn by the State's expert witness were based upon the autopsy report and photographs of the decedent taken both at the scene of the crime and during the autopsy. "A properly qualified physician who has himself ex-

amined the body of deceased, or in response to a hypothetical question on the facts as to it described by other witnesses, may be allowed to express his opinion as to the cause of death of deceased. . . ." 40 C.J.S. Homicide § 257 at 1203 (1944). A physician qualified as an expert witness may properly answer hypothetical questions concerning cause of death based upon facts in evidence. *Hicks* v. *State*, (1937) 213 Ind. 277, 11 N.E.2d 171, *cert. denied* 304 U.S. 594. The testimony permitted in this case, necessitated by the death of the physician who conducted the autopsy in question, was based upon the report and photographs already admitted into evidence. Properly qualified as an expert in pathology, the witness was correctly permitted to testify.

The Appellant also urges error in the admission into evidence of a conclusion in the autopsy report: "The manner of death is homicide." Given the other evidence properly admitted, and the availability of the State's expert for cross-examination, we think that any error in the admission of that sentence must be regarded as harmless.

## VIII.

It is next asserted that the trial court erred in refusing to give Defendant's Proposed Instruction No. 2 to the jury, which would have instructed the jury that there was no evidence to prove that the defendant was either an accessory before or after the fact, and that it should not return a verdict of guilty based upon accessory liability. Similarly, the Appellant urges error in the reading of State's Instruction No. 2, which instructed on aiding and abetting.

The statement by the Appellant admitted into evidence at trial revealed that the Appellant witnessed Donna Chadwick beat her child. The Appellant had been living with Chadwick and admitted hitting the child himself. Although the Appellant recognized that the child was very ill, he complied with his girlfriend's desire that she not be taken to a doctor.

Proof of a defendant's failure to oppose the commission of a crime, companionship with another engaged therein, and conduct before and after the offense may be considered in determining whether aiding or abetting may be inferred. *Cotton* v. *State*, (1965) 247 Ind. 56, 211 N.E.2d 158. A preconceived scheme or plan need not be proven. Mere concerted action or participation in the illegal acts is enough. *Simmons* v. *State*, (1974) 262 Ind. 300, 315 N.E.2d 368.

While we readily concede that the evidence of accessory liability in this case was not strong, it was present. Though a defendant is charged as a principal, it is not error to instruct the jury on the accessory statute if there is evidence to support conviction as an accessory. *Doss* v. *State*, (1971) 256 Ind. 174, 267 N.E.2d 385.

## IX.

The final contention to be considered here is that the trial court erred in rejecting Defendant's Tendered Instruction No. 1:

> "You are instructed that you may not return a verdict of guilty to any offense greater than second degree murder and that if you do return a verdict of guilty of second degree murder, your recommendation for the penalty shall not be greater than a sentence of imprisonment for not less than 16 nor more than 25 years."

This instruction was based upon the conviction of Donna Chadwick for second degree murder and her sentence of not less than fifteen nor more than twenty-five years, and the doctrine of mandated consistency between the convictions of principals and accessories. This doctrine was recognized by this Court in *Combs* v. *State*, (1973) 260 Ind. 294, 295 N.E.2d 366, and dictates that where there have been, in certain situations, "two separate judicial determinations on the merits of the respective cases, and where they are contradictory, the law will impose a consistency to their findings."

The instruction tendered in this case was properly refused. That instruction is premised upon a finding of guilt based on accessory liability. This was not the theory upon which the Appellant was charged, and was not the only theory upon which he could have been convicted. This opinion has demonstrated that it was not the only theory which could be sustained by the evidence. The refusal of an erroneous instruction is not error. *Lockridge* v. *State,* (1975) 263 Ind. 678, 338 N.E.2d 275; 8A I.L.E. *Criminal Law* § 574 (1971).

Nor do we find error in the trial court's refusal to modify the sentence of the Appellant to conform to that of Donna Chadwick. If it is assumed that the Appellant was convicted upon an accessory theory, the cases mandating consistency between such convictions require that the judicial *determinations of guilt* be consistent. *Combs* v. *State, supra. Schmidt* v. *State,* (1973) 261 Ind. 81, 300 N.E.2d 86. They do not require uniformity in sentencing when, as in this case, the jury is given limited discretion within a particular crime.

The jury was informed of Donna Chadwick's sentence and determined that the Appellant's participation in the crime charged merited a sentence of life imprisonment. We cannot say that the jury abused its discretion in making this determination. If it was a proper sentence to impose, the trial court was not empowered to set it aside. *Ellison* v. *State,* (1977) 266 Ind. 114, 360 N.E.2d 1256.

The judgment of the trial court is affirmed.

All justices concur.

NOTE.—Reported at 363 N.E.2d 1221.