Robert P. HENSLEY, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 26A01–9011–CR–466.

Court of Appeals of Indiana,
First District.

June 27, 1991.

Transfer Denied Sept. 10, 1991.

Michael C. Keating, Laurie Baiden Bumb, Evansville, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Wendy Stone Messer, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

## STATEMENT OF THE CASE

RATLIFF, Chief Judge.

Robert P. Hensley (Hensley) appeals his conviction of Theft,[1] a class D felony, the adjudication that he is an Habitual Offend-

---

er,[2] and his enhanced sentence of thirty-one years and six months. We affirm Hensley's conviction but remand with instructions for resentencing.

## ISSUES

1. Whether the trial court erred in permitting the State to question Hensley about his prior burglary conviction.

2. Whether the trial court erred in overruling Hensley's objection to the State's questioning of defense witness Frieda Grove.

3. Whether the trial court erred in giving its final instruction No. 9 to the jury.

4. Whether the trial court committed reversible error in permitting the State to introduce at sentencing statements made by Hensley during plea bargain negotiations.

## FACTS

Hensley burglarized a house in conjunction with Ricky White (White) and stole antique chairs from the house. Hensley and White sold three chairs to a used furniture dealer from whom the chairs were recovered. After Hensley's subsequent arrest and advisement of rights, Hensley told Indiana State Police Trooper Roger Cannon, "Well ... you guys have got me. You bastards have finally got me". Record at 151. He also told Police Chief Morris Meals and Trooper Mike Hildebrand that two of the three chairs he sold to the furniture dealer were stolen but the third belonged to him.

Hensley was charged with Burglary,[3] a class C felony, and theft, and with being an habitual offender. He was tried by a jury on July 23–24, 1990. During cross-examination the State asked Hensley whether he had been convicted of burglary on December 30, 1983. When Hensley admitted that he had been, the State asked him what he had burglarized. The court overruled Hensley's counsel's objection to the ques-

---

**1.** IND.CODE § 35–43–4–2.

**2.** I.C. § 35–50–2–8.

**3.** I.C. § 35–43–2–1.

tion and ordered Hensley to answer. Hensley stated that he had burglarized a house. Over Hensley's counsel's objection to the State's question regarding what Hensley had taken from the house, Hensley replied that he could not recall.

During the State's cross-examination of defense witness, Frieda Grove, the court permitted the State, over Hensley's objection, to ask the witness whether she was aware that Hensley went with White to sell stolen chairs.

The jury found Hensley not guilty of burglary, but convicted him of theft and found he was an habitual offender. During the habitual offender phase of the trial, the trial court gave instruction No. 9 defining prior unrelated felony convictions. During sentencing, the trial court permitted the State to question Officer Hildebrand regarding what Hensley had told him during failed plea negotiations about a burglary in another county. Hensley now appeals.

### DISCUSSION AND DECISION

*Issue One*

Hensley argues the trial court erroneously permitted the State to question him during cross-examination regarding details of his prior burglary conviction. Hensley contends the State's purposes in questioning him about his prior conviction were to impeach him and to encourage the jury to infer that because he had burglarized a home before he probably had done so again.

■ Where questions of a witness regarding details of a prior conviction are beyond the scope of direct examination, the witness may not be questioned about them. *Rice v. State* (1977), 173 Ind.App. 240, 242, 363 N.E.2d 1251, 1252. Furthermore, although a witness may be cross-examined about whether he or she previously was convicted of a particular crime when the prior offense was an infamous crime or a crime of dishonesty, the details of the prior conviction may not be explored. *Hobbs v. State* (1990), Ind., 548 N.E.2d 164, 168. Because the State's questions exceeded the scope of direct examination and solicited details about Hensley's prior conviction, the court erred in permitting those questions by the State.

■ Nevertheless, "the improper admission of evidence is harmless error when the conviction is supported by such substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction." *Jaske v. State* (1989), Ind., 539 N.E.2d 14, 22. The jury acquitted Hensley of burglary. Therefore, the improperly admitted evidence did not contribute to a burglary conviction. The evidence favorable to the State shows that Hensley took White to the Jones' house where White entered and took two antique chairs which he loaded into the car with Hensley's help. The owner of the chairs had not authorized the two to take the chairs. Hensley and White transported the chairs, along with one of Hensley's to a used furniture store where they sold all three, as evidenced by a check made out by the shop's owner to Hensley. The rightful owner recovered the chairs from the shop. After his arrest, Hensley admitted to police that two of the chairs were stolen. The foregoing constitutes substantial independent evidence of Hensley's guilt of knowingly and intentionally exerting unauthorized control over another's property, with the intent of depriving the other person of the property's use or value. *See* I.C. § 35–43–4–2(a) (definition of theft). Thus, the court's error in permitting the State to question Hensley about the details of his prior burglary conviction was harmless.

*Issue Two*

■ Hensley argues the court erred in overruling his objection to the State's question of defense witness Frieda Grove as to whether she was aware that Hensley had gone with White to sell stolen chairs. Hensley's ground for objection was that Grove was not a character witness and, therefore, the facts of the case were not relevant to her testimony and the question constituted improper impeachment. Hens-

ley did not allege that his case was prejudiced by the question.

A trial court has wide discretion in conducting cross-examination, and we will reverse the court's ruling only for an abuse of that discretion. *Braswell v. State* (1990), Ind., 550 N.E.2d 1280, 1282. "To show an abuse of discretion by the judge in controlling the scope of cross-examination, appellant must show how he was prejudiced by the trial judge's actions." *Id.*

A court may permit cross-examination of subject matters covered during direct examination, "including any matter which tends to elucidate, modify, explain, contradict or rebut testimony given during direct examination by the witness." *Hicks v. State* (1987), Ind., 510 N.E.2d 676, 679. During direct examination, Grove testified that White, who testified at trial about Hensley's participation in the theft of the chairs, had telephoned her after the charges had been filed and had told her Hensley "had not done what he was accused of and that he had been set up." Record at 233. The State's question appears to have been intended to clarify if Grove understood which acts White was referring to when he stated Hensley had been set up on charges. The trial court did not err in permitting the State to cross-examine Grove regarding her statements on direct examination. Furthermore, even if the State's question were impermissible, Hensley has failed to show he was prejudiced by the court's ruling. Therefore, we hold the court did not abuse its discretion in permitting the State's cross-examination of Grove.

*Issue Three*

■ Hensley argues the court erred in giving its final instruction No. 9 at the trial on the habitual offender charge and, therefore, the habitual offender adjudication should be vacated. The instruction read: "The term 'prior unrelated felony convictions' means a felony conviction for which the person is convicted and sentenced, separate and apart from any other felony conviction and sentence." Record at 385. Hensley objected at trial that the instruction was an incomplete or incorrect state-

ment of the law because it failed, pursuant to the habitual offender statute, I.C. § 35–50–2–8(b), to set out the chronological sequence of the convictions and sentences on the prior unrelated felonies. Nevertheless, the record does not reflect that Hensley tendered his own instruction on the matter. A party has waived any complaint that a trial court's instructions were incomplete when that party has failed to tender any instructions on the issue. *Clark v. State* (1990), Ind., 561 N.E.2d 759, 764. Therefore, Hensley may not complain about the trial court's instruction No. 9. We find no reason to vacate the habitual offender adjudication.

*Issue Four*

Hensley contends the trial court erred in overruling his objection during the sentencing hearing to the State's question to Officer Hildebrand regarding what Hensley had told him about a burglary in Knox County. Hensley contends the conversation about which the State questioned Officer Hildebrand took place as a part of failed plea negotiations. One of the conditions under which Hensley was to receive a plea agreement was that he provide a "clean-up" statement concerning his criminal activities in other counties. Hensley contends information gained by the police during the failed negotiations was inadmissible during sentencing just as it would have been at trial. Hensley contends Officer Hildebrand's testimony regarding the information given by Hensley prejudiced the trial court in sentencing him. Hensley also argues that without the information, the court would have exercised its discretion, under I.C. § 35–50–2–8(c), to reduce the habitual offender enhancement to Hensley's sentence from thirty years to twenty years.

■ Any communication related to plea negotiations is privileged and inadmissible in evidence unless a defendant afterward has entered a guilty plea which the defendant has not withdrawn. *Crandell v. State* (1986), Ind.App., 490 N.E.2d 377, 380, *trans. denied; Moulder v. State* (1972), 154 Ind.App. 248, 258–59, 289 N.E.2d 522,

528. *See also* I.C. § 35–35–3–4 (where the court did not approve a plea agreement, "a verbal or written communication concerning [a] plea agreement, may not be admitted into evidence at the trial of the case …"). A communication is considered to be privileged, and therefore inadmissible, if the communication's "ultimate purpose [is] the reduction of punishment or other favorable treatment from the State to the defendant." *Crandell*, 490 N.E.2d at 380. The State concedes Hensley's communication to Officer Hildebrand occurred during plea negotiations of which the ultimate purpose was to reduce Hensley's punishment.

 In Indiana, a trial court sentencing a criminal defendant is to consider, among other factors, the defendant's prior criminal record and character, and the court may impose an aggravated sentence if a defendant has a history of criminal or delinquent activity. I.C. § 35–38–1–7.1. A trial court properly may consider evidence of prior criminal conduct which has not been reduced to conviction, *Creasy v. State* (1988), Ind., 518 N.E.2d 785, 787, and evidence of prior uncharged crimes, *Flinn v. State* (1990), Ind., 563 N.E.2d 536, 544. Our courts have not addressed whether a defendant's criminal history of uncharged crimes may be considered by a sentencing court even though the court gained its information through statements made by a defendant during the course of plea negotiations.[4]

In *Moulder* and *Crandell*, we cited in support of our rule the A.B.A. Standards for Criminal Justice, Standards Relating to Pleas of Guilty, 3.4 [now 14–3.4] (1986) which states, "Unless the defendant subsequently enters a plea of guilty … statements made by the defendant in connection with and relevant to such plea discussions, should not be received in evidence against or in favor of the defendant in any criminal or civil action or administrative proceedings." Additional sources containing similar language include the *Uniform Rules of Criminal Procedure*, 10 U.L.A. 441(e) (1987); and Fed.R.Crim.P. 11(e)(6). As the Commentary to Standard 14–3.4 of the A.B.A. Standards for Criminal Justice states, "A contrary rule would discourage plea negotiations and agreements, for defendants would have to be constantly concerned whether, in light of their plea negotiation activities, they could successfully defend on the merits if a plea ultimately was not entered." Although we are unable to find any cases considering this matter, we believe this policy of preventing the use of statements made by a defendant during plea negotiations in any criminal, civil, or administrative proceeding prohibits admission into evidence during a sentencing proceeding. Defendants understandably would be hesitant to enter plea negotiations if they feared that statements made during the negotiations could be used against them at sentencing. Therefore, we hold that a sentencing court may not consider statements, including "clean-up" statements which involve uncharged crimes, which statements are made by a defendant during plea negotiations which did not result in a plea agreement accepted by the court.

 We note that Fed.R.Evid. 410 also provides that evidence of a guilty plea or statements made in connection with plea bargaining are not admissible against a defendant in a civil or criminal proceeding. The commentary to Fed.R.Evid. 410 in C. Wright & K. Graham, *Federal Practice and Procedure*, Federal Rules of Evidence, § 5349 (1980) notes that pursuant to Fed. R.Evid. 1101(d) the Federal Rules of Evi-

---

**4.** Our courts also have not addressed whether a sentencing court may consider substantive charges which have been dismissed or have remained unfiled or prior convictions which the State has agreed not to raise as a result of the defendant's plea bargain with the State. However, we leave that question for another day, only noting that a court may not consider a charge of which a defendant has been acquitted, *McNew v. State* (1979), 271 Ind. 214, 221, 391 N.E.2d 607, 612; *Fugate v. State* (1987), Ind. App., 516 N.E.2d 75, 79, and that other states have held that a sentencing court may not consider such substantive charges or prior convictions. *See People v. Harvey* (1979), 25 Cal.3d 754, 159 Cal.Rptr. 696, 602 P.2d 396; *In re Knight* (1982), 130 Cal.App.3d 602, 181 Cal.Rptr. 853; *State v. Womack* (1982), Minn., 319 N.W.2d 17.

dence do not apply during sentencing proceedings and concludes that a judge may use pleas or plea-connected statements in sentencing. In addition, we are aware of *State v. Klappal* (1984), 218 Neb. 374, 355 N.W.2d 221, which stated that Neb.Rev. Stat. § 27–410, an adoption of the Federal Rules of Evidence, is merely an evidentiary rule and does not apply to sentencing. That court held that although Klappal's guilty plea was withdrawn and a charge dismissed after his completion of probation for the charge, the court could consider the withdrawn guilty plea during the sentencing stage of a subsequent trial, even though the court could not have considered the withdrawn plea at the trial itself. *Id.* 355 N.W.2d at 225. Indiana has not adopted the Federal Rules of Evidence, and we view the rule prohibiting evidence of plea bargaining or statements made during plea bargaining, where the court does not accept a plea agreement, as a rule of substantive law and not as a mere evidentiary rule.

Thus, we hold the trial court erred in permitting Officer Hildebrand to testify during sentencing regarding an uncharged crime Hensley confessed to during the failed plea negotiations. Because the information may have affected the court's entry of the presumptive thirty-year enhancement for an habitual offender, we remand to the trial court to reconsider the sentence for the habitual offender adjudication. We emphasize that we are not vacating the adjudication, but are remanding solely for reconsideration of the sentence.

Affirmed, but remanded for further proceedings in accordance with our instructions.

BAKER and GARRARD, JJ., concur.