Bobby O. HILTON, Jr., Appellant,

v.

STATE of Indiana, Appellee.

No. 982S340.

Supreme Court of Indiana.

Oct. 21, 1983.

Nancy L. Broyles, McClure, McClure & Kammen, William L. Soards, Soards & Carroll, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., G. Douglas Seidman, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Bobby O. Hilton, Jr., was found guilty during a bench trial by the Marion County Superior Court of class A felony burglary, class A felony robbery and class B felony criminal confinement. The trial court sentenced him to concurrent imprisonment terms of thirty years for burglary, thirty years for robbery and ten years for confinement. Appellant now directly appeals and raises the following as his sole issue:

1) whether the trial court erred by admitting in-court identification testimony that allegedly was fatally tainted by certain pretrial identification procedures.

During the early afternoon of December 21, 1981, Mary Sizemore was in her house in Marion County when she heard a noise and saw the face of a young man in the window of the front door. The door burst open. Mrs. Sizemore grabbed the door and struggled to close it. She was still able to see the young man's face as she pushed against the door. The young man put his hand through the opening in the doorway and, despite Mrs. Sizemore beating on his hand, finally pushed the door open. There were two men. By the time the men entered Mrs. Sizemore's home, both were wearing masks. They grabbed Mrs. Sizemore. One yelled "Knock her out" as the other began to pistol whip her on her head. She was injured and began to scream. Someone put a hand over her mouth to quiet her. She was pushed to the floor. While the shorter man held a gun on her, the other went into a bedroom and ransacked it. The shorter man was the one whose face Mrs. Sizemore had seen. The other man returned from the bedroom with a pink, flowered pillow case and put it over her face. Although she could not see the men while covered with the pillowcase, she could hear them talking. They eventually removed the pillowcase from her face and filled it with items they intended to steal. Among other items, the

men asked Mrs. Sizemore for her car keys. They subsequently forced her to roll over and to put her hands behind her back. They tied her up and left. The entire encounter lasted approximately thirty minutes.

Mrs. Sizemore heard them start her car and heard it move. Moments later, Mrs. Sizemore's ten-year-old daughter, Cynthia, arrived home. She had been released from school early due to inclement weather. Cynthia testified that as she approached her home, she saw two men. One of the men ran out of her yard until he caught up with the other man who was in front of her house, at which time they both proceeded to walk away from her house and towards her. As she passed within three feet of them, the shorter man spoke to her. He was wearing a woolen stretch-type winter hat, had long blond hair and pimples and was carrying a pink, flowered pillowcase. Cynthia noticed that her mother's Cadillac automobile had been backed into a snowbank. She went into her house, found her mother and untied her. Mrs. Sizemore called the police.

Marion County Sheriff's Detective Sergeant Carold Baker investigated the incident and interviewed both Mary and Cynthia Sizemore. One or two days after the incident, he separately showed each of them a photographic array of six suspects. Neither could identify any of the six. Appellant's photograph was not among those in said array. One to three weeks later, Mrs. Sizemore's husband, Kermit, brought home an array of three photographs depicting three different men. Mr. Sizemore indifferently presented the array to his wife and daughter for their consideration. Mrs. Sizemore put the photos under a lamp and carefully studied them. When she recognized one photo as depicting the smaller assailant, she became terrified. Cynthia also identified one photograph as portraying the smaller assailant. The photograph selected was of Appellant.

Approximately one month after the incident, Detective Baker conducted a line-up in the jail. Appellant was permitted to choose fellow inmates to comprise the rest of the line-up panel. Mary and Cynthia Sizemore viewed the line-up separately. They were instructed to circle the number on a preprinted form that corresponded to the position of the suspect, if any, who most resembled either of the assailants. Both picked the person standing in position number four without any difficulty. That person was Appellant. Mrs. Sizemore stated that she had no trouble recognizing Appellant even though his hair was different. She said that she presumed her assailant would be in the line-up but that she did not know of his presence for certain. When questioned during trial about how long she had viewed her assailant's face, Mrs. Sizemore replied: "Long enough to remember his face. I'll never forget it." She also testified:

"Yes sir, I'll never forget that face. I see it in my dreams at night. He had blemishes all over his face."

Cynthia recognized Appellant's face and his voice.

I

■ The test to determine the suggestiveness of a photo array is whether the array was impermissively suggestive and conducive to mistaken identification considering the totality of the circumstances. This Court has held:

"It is well settled that the practice of exhibiting a number of photographs to a witness of a crime for the purpose of seeking the identity of the perpetrator is not, as a general proposition, an impermissible investigative method. *Head v. State,* (1982) Ind., 443 N.E.2d 44; *Wilson v. State,* (1981) Ind., 418 N.E.2d 1150. It is only when the display is accompanied by verbal communications or includes graphic characteristics which distinguish and emphasize a defendant's photograph in an unduly suggestive manner that the procedure is condemned as violative of due process. *Head v. State, supra; Parker v. State,* (1981) Ind., 415 N.E.2d 709."

*Lane v. State,* (1983) Ind., 445 N.E.2d 965, 967.

 Appellant now argues that it is highly unlikely that Kermit Sizemore displayed his photo array in an impartial manner with photographs of men similarly portrayed and similar in physical appearance. His argument constitutes mere speculation since he does not point us to anything in the Record to substantiate his claim. The Record here does not demonstrate any procedures used by the police or by Mr. Sizemore which manifest any undue suggestivity. Rather, the obvious inference from the evidence adduced at trial is that Witnesses Mary and Cynthia Sizemore viewed Appellant at very close range for a period of time sufficient to form a strong impression of Appellant's face and thereby were able to easily select his photograph from the array containing his photograph. Notwithstanding the possibility that the pre-trial identification procedures utilized in the instant case were impermissibly suggestive, we still find no error. The in-court identification by a witness who had participated in an impermissibly suggestive out-of-court identification proceeding is admissible if an independent basis for the in-court identification is established. *White v. State,* (1982) Ind., 433 N.E.2d 761. Considering the totality of the circumstances surrounding the witnesses' opportunity to observe Appellant during the commission of these crimes, we find that an independent basis for the in-court identifications did exist.

The trial court is in all things affirmed.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.