**David Lee BELL, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 34S00-9107-CR-520.**

Supreme Court of Indiana.

March 9, 1993.

Rehearing Denied May 11, 1993.

 ☜🗝1035(1)

Brent Westerfeld, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

Appellant was tried by jury and convicted of Robbery, a Class A felony; Battery, a Class C felony; and was found to be a habitual offender. Appellant was sentenced to six (6) months for the battery. That sentence was to be served concurrently with his sentence of forty-five (45) years for the robbery, which was enhanced by thirty (30) years due to his status as a habitual offender.

The facts are: On December 18, 1989, appellant and his brother, Jesse Bell, entered an apartment above the Markland Cafe in Kokomo and robbed and beat the victim, Gayle Roe. Roe heard someone knocking on the door and went to the door when he heard it being kicked. A person later identified as Jesse Bell entered the room, pushing Roe aside in the process, and began taking beer from Roe's refrigerator. Roe attempted to stop Jesse Bell but was shoved and hit by Bell until he fell onto his bed where the attack continued.

During the attack, appellant entered the room and reassured Roe that he would not let Jesse hurt him. Appellant then asked Roe for some money, which Roe indicated he did not have. Appellant left the room

and returned with a stick measuring approximately five feet in length. Appellant used the stick to strike Roe on the head and shoulders. Roe was knocked to the floor. Jesse stomped on Roe's leg breaking his kneecap and fibula. Roe also received a burn on his arm from being knocked against a hot radiator. Appellant and Jesse then left Roe lying on the floor of his apartment. Roe later was taken to the hospital.

Appellant, by counsel, made a motion for speedy trial on January 26, 1990. The trial court granted appellant's motion on January 31, 1990 and set the matter for trial on March 28, 1990. The trial court also granted appellant's request to serve as co-counsel. The seventy day time period established in Ind.Crim.Rule 4(B)(1) would have expired April 6, 1990. Appellant's counsel requested a continuance. The trial court rescheduled the trial for July 20, 1990.

On March 28, 1990, appellant objected to the continuance which was obtained by his counsel and filed a motion for dismissal due to a violation of Crim.R. 4. The trial court held a hearing on the motion and denied appellant's request for dismissal. The trial court, however, did reschedule the trial for April 16, 1990. No objection was made to that trial date.

■ When a motion for discharge pursuant to Crim.R. 4 is made prematurely, it is properly denied. *Banks v. State* (1980), 273 Ind. 99, 402 N.E.2d 1213. In the case at bar, appellant's motion for discharge was made on the sixty-first day of the seventy day time period. The trial court did not err in denying the motion because the motion was prematurely made.

■ The purpose of a "Motion for Speedy Trial" is served when the motion is made and the cause is set for trial. *Dixon v. State* (1982), Ind., 437 N.E.2d 1318. A defendant must object at the earliest opportunity when his trial is set beyond the time limitations of Crim.R. 4. *Fry v. State* (1988), Ind., 521 N.E.2d 1302. If an objection is not timely made, the defendant is deemed to have acquiesced to the later trial date. *Decker v. State* (1988), Ind., 528 N.E.2d 1119.

■ Appellant objected after his counsel obtained a continuance and a July 20, 1990 trial date. At the hearing on appellant's motion for discharge, the trial court also considered appellant's objection to having the case tried beyond the limits of Crim.R. 4. Both appellant and his counsel were present at this hearing during which rescheduling of the trial was discussed. Appellant did not object when the trial court reset the trial for April 16. Because appellant did not object to this trial date he acquiesced to it and may not raise the issue on appeal.

■ Appellant argues that the State did not prove an adequate chain of custody regarding various items of physical evidence. He contends that the trial court erred by allowing these items and testimony concerning them in evidence. Specifically, appellant objects to the admission of Exhibit 2, a tree limb; Exhibit 3, bloodstained cigarettes; Exhibit 4, blood standards taken from the Bells and Roe; Exhibit 5, a Budweiser beer can; Exhibit 7, appellant's bloodstained brown coat; and Exhibit 12, a bloodstained cigarette carton.

Evidence adduced at trial showed that after each of these items was seized they were placed in the custody of Officer Lewis Wilson, a property officer for the Kokomo Police Department. Officer Wilson testified that he transported those items to the Indiana State Police laboratory in Indianapolis. Dana Peterson, the serologist who analyzed the items, testified that she worked at the Indiana State Police laboratory in Lowell, Indiana. She stated that when the Indianapolis laboratory has a backlog of evidence to analyze, the evidence is transported to the Lowell laboratory. She further testified that the evidence is transported by either one of their chemists, who are police officers, or by the State Police evidence clerk. There was no testimony presented by the person who transported the items from Indianapolis to Lowell.

■ Under the chain of custody doctrine, an adequate foundation is laid when

the continuous whereabouts of an exhibit from the time it came into the possession of the police is shown. *Wray v. State* (1989), Ind., 547 N.E.2d 1062. We have held that the less likely an exhibit is susceptible to alteration or tampering the less strictly the chain of custody rule is applied. *Id.* A proper foundation for introduction of physical evidence is laid if a witness is able to identify the item and the item is relevant to the disposition of the case. *Id.*

The State can lay an adequate foundation by providing a "reasonable assurance" that the evidence was undisturbed as it passed from the custody of one person to the next. *Kennedy v. State* (1991), Ind., 578 N.E.2d 633, *cert. den.*, — U.S. ——, 112 S.Ct. 1299, 117 L.Ed.2d 521. If the State presents evidence which "strongly suggests" the exact whereabouts of the evidence at all times, that is sufficient. *Id.* The defendant can challenge the adequacy of the foundation but he must present evidence which does more than raise a mere possibility that the evidence could have been tampered with. *Id.* Any gaps in the chain of custody would go to the weight of the evidence and not to the admissibility of the evidence. *Id.* Further, when evidence is handled by public officers, there is a presumption that they use due care and that the evidence is handled with regularity. *Id.*

The State provided testimony which suggested that there was a backlog at the Indianapolis laboratory, and when such an event occurs, the normal procedure is to transport the evidence to the Lowell laboratory. The tests were conducted by a serologist working at the Lowell laboratory and she was able to identify the items presented. Appellant did not present any evidence showing that the items were tampered with during the time they were being transported between Indianapolis and Lowell.

Appellant argues that Peterson did not have personal knowledge that the Indianapolis laboratory followed standard operating procedures in this case and that her testimony regarding such procedures was inadmissible hearsay. Peterson testified that she knew which officer retrieved the items from Indianapolis. On cross-examination, she stated that she did not personally observe that officer retrieve the items. Peterson did know the standard procedure used by the Indiana State Police. Because of the presumptions that evidence is handled by public officials with regularity and that due care is used in handling the evidence, the testimony regarding what was regular procedure was relevant and admissible.

Her testimony was not offered to prove that she knew the procedure had been followed but rather to show what the procedure was. At that point, appellant could rebut the presumption by showing how the evidence had been tampered with or altered. Appellant did not elicit any testimony to support that contention. Therefore, he failed to raise more than a mere possibility of tampering. The trial court did not err in admitting this testimony or the testimony concerning tests which were conducted on the exhibits and conclusions which were reached as a result of those tests.

Appellant contends the trial court committed reversible error when, after ordering the separation of witnesses, he granted the State's request for two witnesses to remain in the courtroom during the trial. Appellant argues that he was prejudiced by the fact that two police officers who were also witnesses for the State were allowed to remain in the courtroom and were able to somehow conform their testimony to make up for weaknesses in the testimony of other witnesses for the State.

When a motion for separation of witnesses is made, the ruling on the motion is left to the sound discretion of the trial court. *Gee v. State* (1979), 271 Ind. 28, 389 N.E.2d 303. We have held that each party has a right to have one person in the courtroom to assist counsel. *Id.* Further, a police officer may remain in the courtroom even though he is also a witness. *Id.*

A trial court's ruling on a motion for separation of witnesses will not be disturbed on appeal unless an appellant can show there was a manifest abuse of discre-

tion. *Garland v. State* (1982), Ind., 439 N.E.2d 606.

In the present case, appellant contends that he was prejudiced but has failed to show how the testimony of the police officers was somehow changed by virtue of their being in the courtroom to hear the other testimony. The officers testified regarding the collection of evidence from the scene of the crime and the investigation which ultimately led the police to appellant and his brother. The other witnesses testified regarding what they observed on the evening the crimes occurred. We see no manifest abuse of the trial court's discretion.

 Appellant argues that the trial court's instruction to the jury on reasonable doubt was faulty. The following is the instruction which was given to the jury in appellant's case:

"A 'reasonable doubt' is a fair, actual and logical doubt that arises in your mind after an impartial consideration of all of the evidence and circumstances in the case. It should be a doubt based upon reason and common sense and not a doubt based upon imagination or speculation.

If, after considering all of the evidence, you have reached a firm belief in the guilt of the Defendant that you feel safe to act upon that belief, without hesitation, in a matter of the highest concern and importance to you, then you will have reached that degree of certainty which excludes reasonable doubt and authorizes conviction.

The rule of law which requires proof of guilt beyond a reasonable doubt applies to each juror individually. Each of you must refuse to vote for conviction unless you are convinced beyond a reasonable doubt of the Defendant's guilt. Your verdict must be unanimous."

We note that this instruction is taken largely from the Indiana Pattern Jury Instructions (Criminal) 11.01.

Appellant objected to the instruction on the ground that it violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Appellant specifically objected to the words "fair" and "actual" doubt which were used to describe reasonable doubt. Appellant contends that the use of those words required a degree of doubt much higher than that required for an acquittal and, therefore, violated the Due Process Clause. Appellant cites *Cage v. Louisiana* (1990), 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339, to support his position.

In *Cage* the petitioner had been convicted of first-degree murder and was sentenced to death. Cage challenged the instruction given to the jury regarding reasonable doubt. The instruction included such terms as "grave uncertainty" and "actual substantial doubt" in defining reasonable doubt. The instruction further stated that the doubt was a reasonable one if it was based on a "moral certainty." The United States Supreme Court in a *per curiam* opinion held that the words "substantial" and "grave" coupled with a "moral certainty" instead of an evidentiary certainty allowed a finding of guilt below the standard set forth in *In Re Winship* (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368. The Court found that this instruction violated the Due Process Clause.

The challenge in the present case is much the same as the challenge made by the appellant in *Grassmyer v. State* (1981), Ind., 429 N.E.2d 248. There we held the use of the words "fair" and "actual" doubt correctly stated the law on the burden of proof and did not violate the Due Process Clause. Appellant argues that the definition of those words as they appear in Webster's Encyclopedic Unabridged Dictionary of the English Language support his argument that they change the standard of proof for acquittal as in *Cage*. However, as argued by the State, those terms are further defined at the end of the paragraph by use of the language "doubt based on reason and common sense and not upon imagination or speculation." We see no error in the use of those words to define reasonable doubt.

 Appellant also challenges the definition of certainty each juror must possess

in order to find that a defendant was guilty beyond a reasonable doubt. Appellant argues that the wording "you have reached a firm belief in the guilt of the Defendant that you feel safe to act upon that belief, without hesitation, in a matter of the highest concern and importance to you" is the equivalent of "moral certainty" which was found to be defective in *Cage*. As the State points out, the challenged language merely stresses that the jurors should reach a well-considered decision. The wording, unlike that in *Cage*, bases the doubt in terms of consideration of the evidence. We see no error in the challenged instruction.

█ Appellant's final argument is that the evidence is insufficient to sustain the finding that appellant is a habitual offender. He alleges the State failed to identify him as the person who was convicted of and sentenced for the two prior unrelated felonies.

██ It is the State's burden to prove that the defendant is the person who was convicted of the prior felonies. *Thomas v. State* (1984), Ind., 471 N.E.2d 677. To make the proper showing, the State must produce certified copies of records showing convictions of two prior unrelated felonies and supporting evidence to identify the defendant as the same person who was convicted of those crimes. *Barger v. State* (1984), Ind., 466 N.E.2d 725.

█ When we conduct our review on a challenge of the sufficiency of the evidence, we will affirm the trial court if, considering only the probative evidence and reasonable inferences supporting the verdict without weighing the evidence or assessing witness credibility, a reasonable trier of fact could make the determination beyond a reasonable doubt. *Case v. State* (1984), Ind., 458 N.E.2d 223.

In the case at bar, the State produced State's Exhibit 1 which was an Information charging a David Lee Bell and his brother with a 1983 Burglary under Cause # 6629. David's date of birth is listed as August 20, 1964 on that document. State's Exhibit 2 was an Order finding David Lee Bell was convicted of Burglary in Cause # 6629. State's Exhibit 3 was an Information charging David Lee Bell and his brother with a 1985 Robbery as a Class B Felony under Cause # 6849. On that document, David's date of birth is listed as August 20, 1964, and his social security number is listed as 239–15–2983. State's Exhibit 4 is an Order finding David Lee Bell was convicted of Robbery as a Class C Felony in Cause # 6849.

The State then produced the testimony of Officers Robert Schwartz and John Hurlock who investigated the 1983 Burglary. Both officers testified that they had investigated appellant for the 1983 Burglary and made in-court identifications of appellant as the man they had investigated. Officer Hurlock testified that he received the information regarding date of birth and social security number from appellant. The State produced the testimony of Officer Lee Eckert who had investigated the 1985 Robbery. Deputy Eckert made an in-court identification of appellant as the man who was arrested for that crime. Eckert further testified that the investigation he conducted was in no way related to the previous conviction.

We believe there is ample evidence in the record connecting appellant to the crimes charged in the court documents. The dates listed on the Informations and on the Orders show that one felony was subsequent to the other and that both predated the felony with which appellant was currently charged. We see no error regarding the habitual offender finding.

The trial court is affirmed.

SHEPARD, C.J., and DICKSON and KRAHULIK, JJ., concur.

DeBRULER, J., concurs in result with separate opinion.

DeBRULER, Justice, concurring in result.

The presumption that public officials discharge their duties with due care was introduced into the evidence law of this state in *Kennedy v. State* (1991), Ind., 578 N.E.2d 633 (DeBruler, J., dissenting on other

grounds). The application of that presumption in *Kennedy* was correct; its application here is incorrect.

The presumption is intended to relieve the state from the burden of showing that the officials who maintained possession and control of an item did not tamper or alter it. It operates where, for example, an item is sent from one public official to another by mail. To establish admissibility in such instances the state need not identify each postal employee through whose possession the item might have travelled before reaching its destination. In like manner, the state need not identify each property room attendant who was on duty while an item was kept there.

In *Kennedy*, the evidence was gathered from the scene and mailed to an FBI laboratory. Within the confines of the laboratory the evidence passed between an FBI agent and a lab technician in the testing process. This was standard procedure. The claim raised was whether there was proof of a sufficient chain of custody within the laboratory, and that claim was properly resolved on the basis of the presumption of official due care, and the lack of evidence to rebut the presumption by showing tampering or alteration.

Here, by contrast, the question is not handling within the Lowell laboratory by technicians during the testing process. It is instead when and how the items reached the Lowell laboratory from the Indianapolis laboratory. Fortunately, Peterson, the technician at the Lowell laboratory, described the custody procedures at both laboratories and further testified that the evidence was transported from the Indianapolis laboratory to the Lowell laboratory by one Sergeant Trigg due to a backlog of work at the Indianapolis laboratory and that Trigg had been deputized for such purpose. On cross-examination Peterson admitted she had not personally seen Trigg pick up the evidence from the Indianapolis laboratory and deliver it to the Lowell laboratory. Based upon this lack of first hand knowledge, an objection on hearsay grounds was made and overruled. On appeal that ruling is presumptively valid. I am not persuaded that the ruling was error, upon considering the single basis that Peterson had no first hand knowledge.

In my view, the state satisfied its burden of proving a sufficient chain of custody, and for such reason it was not error to admit the test results of Peterson.