Jesse A. BELL, Jr., Appellant,

v.

STATE of Indiana, Appellee.

No. 34S00–9103–CR–222.[1]

Supreme Court of Indiana.

Oct. 14, 1993.

---

1. This case is a companion case to *David Lee*   *Bell v. State* (1993), Ind., 610 N.E.2d 229.

Brent Westerfeld, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Following a jury trial, appellant Jesse A. Bell, Jr. was convicted of Robbery, a Class A felony, Ind.Code § 35–42–5–1, and Battery, a Class C felony, I.C. § 35–42–2–1(3). The trial court sentenced him to concurrent terms of forty-five (45) years imprisonment for the robbery conviction, enhanced by thirty (30) years by reason of his status as a habitual offender, and six (6) months for the battery conviction.

On direct appeal, appellant Bell raises the following issues:

1. Whether the trial court erred by admitting in evidence testimony regarding plea negotiations and his subsequent confession.

2. Whether the trial court erred by failing to discharge appellant Bell under Ind. Crim.Rule 4(B)(1).

3. Whether the trial court properly admitted evidence of the victim's pretrial photo array and in-court identification testimony.

4. Whether the evidence is sufficient to sustain the jury verdict finding appellant Bell to be a habitual offender.

The convictions are reversed on the basis of issue 1. In addition, issues 2 and 3 are considered below due to the likelihood that they will reoccur on retrial. Finally, issue 4 is also reached below for the purpose of determining whether in the event appellant is again convicted upon retrial for the charged offenses, retrial of the allegation of habitual offender would be barred by principle of double jeopardy. Four additional issues raised by appellant are not here considered because they are not likely to reoccur upon retrial.

I.

The facts most favorable to the verdict show that during the afternoon of December 18, 1989, appellant Bell and his brother, David Bell, had been drinking at the Markland Cafe, a tavern in Kokomo, Indiana. Eventually, the owner asked them to leave the bar. Thereafter, they went to the apartments located above the tavern.

Somewhere between 5:00 p.m. and 6:00 p.m., Gayle Roe, the tavern's janitor, awoke to someone knocking on his apartment door. Roe resided in one of the apartments above the Markland Cafe. As Roe began to approach the door, someone kicked the door partially open. Roe opened the door and saw appellant Bell, whom he recognized, although he could not recall his name.

According to Roe, appellant Bell entered the apartment, shoving Roe down onto the floor. Appellant Bell opened Roe's refrigerator and removed some cartons of generic cigarettes and cans of Budweiser beer.

When Roe got up, he was shoved onto his bed and repeatedly struck by appellant Bell's fists. Roe fell to the floor and appellant Bell began kicking him. While on the floor, another man, later identified by Roe as David Bell, entered the apartment.

David Bell left the room briefly and returned with a tree limb which he subsequently used to bludgeon Roe's head. Thereafter, David Bell and appellant Bell simultaneously assaulted Roe.

Roe testified that appellant Bell remained in his room approximately fifteen minutes before the assault began. Although he was semi-conscious, Roe claims he never completely lost consciousness. Although he did not see them leave, Roe believed that the men were in his apartment for nearly an hour.

Kevin Taylor, a former employee of the Markland Cafe, discovered Roe, still on the floor in the apartment at approximately 8:00 p.m. As a result of the beating, Roe sustained multiple scalp lacerations, contusions on his face and arms, and a fractured left leg. Following the assault, Roe was hospitalized for several weeks.

On December 22, 1989, acting on a warrant for the arrest of Jesse and David Bell, Detectives Edington and Bolan arrested the Bell brothers at their mother's home. Following his arrest, the detectives transported appellant Bell to the police station. During appellant Bell's processing, he agreed to speak to the police about the charges against him. Detective Edington advised appellant Bell of his *Miranda* rights orally and in writing.

Initially, appellant Bell denied being at the Markland Cafe the afternoon of the assault and burglary. He told Detective Edington that he would make a statement only if he received a "deal." Detective Edington, in response, told him that only the prosecutor had the authority to make a "deal." Thereafter, appellant Bell asked the detective to call the prosecutor.

The police contacted Howard County Prosecutor James Andrews and he came to the station where he met with appellant Bell. Prior to his discussion with Prosecu-

tor Andrews, the police again advised appellant Bell of his *Miranda* rights.

Prosecutor Andrews told appellant Bell that he understood that he was contacted in order to discuss a possible deal. When asked what kind of a deal he wanted, appellant Bell responded that he would cooperate in exchange for a fifteen year sentence. Prosecutor Andrews rejected this proposal and made a counteroffer. As the result of these negotiations, they arrived at a plea agreement. Prosecutor Andrews put the plea agreement into writing and signed it.[2]

After accepting this plea agreement, appellant Bell gave a recorded statement to Detective Edington in which he confessed to hitting and robbing Roe. However, once his statement was transcribed and presented for his signature, appellant Bell refused to sign it. Instead, he told Detective Edington that his signature would be tantamount to perjury.

Prior to trial, the trial court denied appellant Bell's motion to suppress his confession. At trial, over appellant Bell's contemporaneous objection, the court admitted this confession as evidence.

## II.

Appellant Bell contends that his statement to the police was given in the course of discussing a plea agreement, and, therefore, it cannot be used at trial by the prosecution. We agree.

In order for appellant Bell's confession to be properly admitted, it must surpass two barriers. The first barrier is erected by Ind.Code § 35–35–3–4, which provides:

A plea agreement, or a verbal or written communication concerning the plea agreement, may not be admitted into evidence at the trial of the case, should the plea agreement not culminate in approval by the court.

2. The plea agreement stated in part:
" * * * I [James Andrews] authorize the following plea-bargain to Jesse A. Bell:
1. Plea to twenty (20) years if victim, Gayle Roe lives through the injuries inflicted by Jesse A. Bell.

2. In the event that Gayle Roe would die from said injuries, then said plea-agreement would be forty (40) years.
3. Said agreement is conditioned in Defendant Jesse Bell making a truthful and factual statement and testimony. * * * "

The second barrier is erected by the Fifth Amendment of the United States Constitution, which provides in pertinent part that:

No person ... shall be compelled in any criminal case to be a witness against himself.

U.S. Const.Amend. V. Appellant Bell's confession does not surmount either barrier. It is privileged under the statute and involuntary under the Constitution.

The purpose of I.C. § 35–35–3–4 and related case law is to facilitate final disposition of felony and misdemeanor charges through a communicative process of negotiations free of legal consequences. *Chase v. State* (1988), Ind., 528 N.E.2d 784, 786. The policy behind this statute protects the State, not just the defendant. *Wright v. State* (1977), 266 Ind. 327, 363 N.E.2d 1221. Statements made as part of plea negotiations as well as evidence of actual agreements, and all of their parts, are declared inadmissible. *Chase,* 528 N.E.2d at 786, *Wright,* 363 N.E.2d at 1228, *Moulder v. State* (1972), 154 Ind.App. 248, 289 N.E.2d 522, 528. The purpose of this rule of inadmissibility mirrors its federal counterpart, Fed.R.Crim.P. 11(e)(6)(D), which declares that no "statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty, or which result in a plea of guilty later withdrawn," shall be admissible.[3] The rule of inadmissibility safeguards the plea bargaining process, which is so important to the administration of criminal justice.

Here, as the product of negotiations with the prosecutor, appellant Bell confessed and orally agreed to plead guilty in exchange for either a lesser charge or a lighter sentence. Judicial approval and acceptance of the plea agreement stand as the lone events that could lift the protective cloak of admissibility from this confession. *Crandell v. State* (1986), Ind.App., 490 N.E.2d 377, 389, *Moulder,* 289 N.E.2d at 528. *See also* I.C. § 35–35–3–4. Appellant Bell refused to sign the confession and consequently there was no judicial approval of this plea agreement. Therefore, the statute rendered this confession inadmissible.

■ Moreover, the policy of the Fifth Amendment privilege provides protection against compulsory self-incrimination. This principle renders a confession inadmissible if it is obtained by a promise of immunity or mitigation of punishment. *Ashby v. State* (1976), 265 Ind. 316, 354 N.E.2d 192, 195. Appellant's statement to the prosecutor, when made, was the result of direct or implied promises by the prosecutor. It is involuntary and inadmissible. *See Hutto v. Ross,* 429 U.S. 28, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976).

### III.

Appellant Bell claims the trial court erred in failing to discharge him under Ind.Crim.Rule 4(B)(1). Appellant Bell asserts that the error occurred when the trial court, despite his objection, rescheduled his trial beyond the seventieth day following his motion for speedy trial.

At the outset of this case, on January 26, 1990, appellant Bell, by counsel, moved for a speedy trial. The trial court granted his motion January 31, 1990 and scheduled the trial for March 23, 1990. Subsequently,

---

**3.** In addition, this is consistent with the Indiana Rules of Evidence effective January 1, 1994. Specifically, such rules state in part:

"Rule 410. Withdrawn Pleas and Offers

Evidence of a plea of guilty or admission of the charge which was later withdrawn, or a plea of *nolo contendere,* or an offer to so plead to the crime charged or any other crime, or of statements made in connection with any of the foregoing withdrawn pleas or offers, is not admissible in any civil or criminal action, case or proceeding against the person who made the plea or offer.

However, such a statement is admissible (i) in any proceeding wherein another statement made in the cause of the same plea or plea discussion has been introduced and the statement ought in fairness to be considered contemporaneously with it, or (ii) in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record and in the presence of counsel."

the trial court granted appellant Bell's motion to serve as co-counsel for his trial. Based on the date of appellant Bell's motion for a speedy trial, the seventy-day period, as required by Crim.R. 4(B)(1), would expire on April 6, 1990.

On March 13, 1990, appellant Bell, by counsel, filed a motion for a continuance in order to depose witnesses and waived his right to a speedy trial. The trial court, on March 20, 1990 granted this motion, over the objection of the State, and rescheduled the trial for July 20, 1990.

Thereafter, on March 23, 1990, appellant Bell filed a *pro se* motion to dismiss, alleging that his right to a speedy trial had been violated. At a hearing on this motion, held March 28, 1990, David Bell, on behalf of his brother, objected to the motion for continuance. He argued appellant Bell lacked prior knowledge of the motion for continuance. Moreover, he asserted that appellant Bell did not consent to the waiver of his speedy trial right. The trial court denied appellant Bell's motion for discharge. However, the trial court rescheduled the trial for the earliest possible date, April 16, 1990.

■ A defendant must object at the earliest opportunity when his trial date is scheduled beyond the limits prescribed by Crim.R. 4. *Fry v. State* (1988), Ind., 521 N.E.2d 1302. Moreover, a defendant must not prematurely file a motion for discharge pursuant to Crim.R. 4. *Bell v. State* (1993), Ind., 610 N.E.2d 229, 232.

■ ■ At the March 28, 1991 hearing, which occurred before the expiration of the seventy-day period commenced by the motion for speedy trial, appellant Bell failed to object when the trial court rescheduled the trial for April 16, 1991. Both appellant Bell and his counsel attended this hearing. Consequently, appellant Bell's failure to object must be regarded as acquiescence to the new trial date and waiver of his right to a speedy trial. *Bell*, 610 N.E.2d at 232.

Moreover, appellant Bell filed his motion for discharge on the sixty-first day of the seventy-day period. Therefore, his motion

for discharge was premature and properly denied.

## IV.

Appellant Bell contends that the trial court erred when it admitted evidence of the pretrial photo array and Roe's in-court identification. He argues that the photo array was impermissibly suggestive in violation of his due process rights. Therefore, Roe's subsequent in-court identification was tainted and should also have been suppressed.

■ Where a trial court has admitted evidence of pretrial and an in-court identification of the defendant by the same witness, the reviewing court must determine whether, under the totality of the circumstances, the pretrial confrontation was so impermissibly suggestive and conducive to irreparable mistaken identification that the defendant was denied due process of law under the Fourteenth Amendment. *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Daniel v. State* (1991), Ind., 582 N.E.2d 364; *Dillard v. State* (1971), 257 Ind. 282, 274 N.E.2d 387. If under the totality of the circumstances, the reviewing court finds the out-of-court procedures were not impermissively and unnecessarily suggestive, both the evidence of the pretrial lineup and the in-court identification were properly admitted by the trial court. *Coleman v. State* (1990), Ind., 558 N.E.2d 1059.

Appellant Bell claims the following facts and circumstances surrounding the pre-trial identification evidence obtained from Roe resulted from an unduly suggestive photo array which created a substantial likelihood of misidentification.

First, during the initial police interview of Roe, the interviewing officer intimated that the police suspected appellant Bell participated in the beating. Later, when the police displayed a photo array, containing appellant Bell's photo, the officer did not ask Roe to identify "the assailant" from the array, but merely whether "he could identify anyone" from the array. Therefore, since Roe knew him prior to the rob-

bery and battery, appellant Bell claims merely asking Roe to identify "anyone" in the array was unduly suggestive. In addition, appellant Bell asserts that following this pre-trial identification, a police officer told Roe that appellant Bell was in custody, thus suggesting that Roe identified the correct person.

■ The practice of exhibiting a photo array to a witness of a crime in order to obtain evidence of the identity of the perpetrator is, generally, a permissible investigative method. *Hilton v. State* (1983), Ind., 454 N.E.2d 1216. "It is only when the display is accompanied by verbal communications or includes graphic characteristics which distinguish and emphasize a defendant's photograph in an unduly suggestive manner that the procedure is condemned as violative of due process." *Lane v. State* (1983), Ind., 445 N.E.2d 965, 967.

■ A review of the record suggest nothing which supports appellant Bell's claim of due process infirmity. The photo array utilized by the police included photographs of six men with similar physical attributes. The record shows that Roe's first assailant entered his apartment and remained in full view for nearly fifteen minutes before he initiated the attack. Therefore, Roe had sufficient opportunity to view appellant Bell in order to form a basis for his subsequent identification testimony. The mere fact that Roe recognized one of his assailants from previous encounters at the Markland Cafe lends little, if any, support to appellant Bell's claim of suggestive procedures.

Finally, the officer's statement to Roe that the individual he identified from the photo array was in police custody occurred after the completion of proper pre-trial identification procedures. Therefore, we find this allegedly suggestive statement did not influence Roe's identification of appellant Bell from among the individuals included in the photo array.

All these factors lead us to the conclusion that the pretrial identification of appellant Bell was reliable. The trial court could reasonably determine that Roe independently identified appellant Bell as the assailant from the photo array, without the aid of improper procedures.

Under the totality of the circumstances, we conclude that the factors and circumstances surrounding the photo array were not impermissibly suggestive and the trial court properly admitted this evidence. Because we find that the pretrial procedure was not impermissibly suggestive, there is no need to evaluate whether an independent basis existed for Roe's in-court identification, and it, too, was properly admitted by the trial court. *Brooks v. State* (1990), Ind., 560 N.E.2d 49, 55.

V.

Finally, appellant Bell challenges the sufficiency of the evidence put forth by the State during the habitual offender proceedings.[4] Despite the fact that the reversal of these convictions for trial error also reverses the determination of habitual offender status that has been made, the appellate claim that the evidence of that status was insufficient must be reached and resolved in order to determine whether retrial on such allegation is barred by the constitutional prohibition against double jeopardy.

■ Appellant Bell asserts that, with respect to one of the alleged prior felony convictions, a class C felony burglary that allegedly occurred on October 22, 1983, the State did not prove that appellant Bell was the person named in the documentary evidence. At trial, the State offered State's Exhibit 1, the charging information; State's Exhibit 2, the judgment; and State's Exhibit 3, the sentencing order for the 1983 Burglary. In addition, Officer Hurlock of the Kokomo Police Department testified that he investigated appellant Bell following the October 22nd burglary. His investigation included an interview of ap-

---

4. Appellant Bell does not contest the sufficiency of evidence in his underlying conviction for robbery and battery. Therefore, we only review the sufficiency of evidence on the habitual offender charge.

pellant Bell conducted October 23, 1983 at the police station. Officer Hurlock identified appellant Bell in-court as the person he investigated and who was subsequently convicted for this burglary.

◼︎ We disagree with appellant Bell's claim that the jury could not infer from this evidence that he and the Jesse A. Bell, Jr. named in the documentary evidence associated with the October 22, 1993 burglary are one in the same. We do not weigh the evidence nor judge the credibility of witnesses. *Land v. State* (1984), Ind., 470 N.E.2d 697, 700. The coincidence in time, place, and type of conviction shown by the documentary evidence and Officer Hurlock's testimony was sufficient to warrant a reasonable trier of fact to conclude beyond a reasonable doubt that appellant Bell was convicted and sentenced for a C felony burglary committed October 22, 1983. *Id.* Therefore, the State established that appellant Bell had accumulated two prior felony convictions as required by I.C. § 35–50–2–8.

◼︎ Where the State fails to prove habitual offender charge by sufficient evidence, a retrial of the habitual offender count will be precluded because of double jeopardy. *Perkins v. State* (1989), Ind., 542 N.E.2d 549, *Phillips v. State* (1989), Ind., 541 N.E.2d 925. However, a defendant may be subjected to retrial in a habitual offender proceeding in which the result in the first trial is vacated due to trial error rather than evidence insufficiency. *Phillips v. State*, 541 N.E.2d at 926. (citing *Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988)).

Because we vacate the habitual offender determination in the present case due to trial error on the underlying felony conviction rather than insufficiency of the evidence on the habitual offender charge, the trial court may therefore conduct a new sentencing hearing involving a retrial of the habitual offender charge. *Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988), *Perkins v. State*, 542 N.E.2d 549.

Based upon the conclusion in part II above, appellant Bell's convictions are reversed and the cause is remanded for a new trial.

DICKSON and KRAHULIK, JJ., concur.

SHEPARD, C.J., concurs in result.

GIVAN, J., dissents with separate opinion.

GIVAN, Justice, dissenting.

I respectfully dissent from the majority opinion in this case and its holding that appellant's confession made after entering into a plea agreement was inadmissible under the statute, Ind.Code § 35–35–3–4, which provides:

"A plea agreement, or a verbal or written communication concerning the plea agreement, may not be admitted into evidence at the trial of the case, should the plea agreement not culminate in approval by the court."

Prior to entering into plea bargaining with the prosecutor, appellant had stated to police that he was willing to make a statement as long as he could make a "deal." Following that statement, the prosecutor was contacted and in fact did make a plea agreement with appellant. However, appellant's confession was not made as a part of that agreement. The State did not attempt to place any evidence before the court concerning the negotiations, as prohibited by the statute. Appellant's confession was given after full rights warnings and was not a part of any of the discussion appellant had with the prosecuting attorney in reaching his plea agreement. I do not think the confession came under either the statute or the cases that have been decided under the statute.

The majority opinion also states that to allow the confession in evidence would be a violation of the Fifth Amendment of the United States Constitution, which prohibits a person being compelled to be a witness against himself in a criminal action. I believe the majority opinion to be in error in this regard. To follow such a line of reasoning would prohibit the use of any con-

fession made by a defendant in a criminal case regardless of the manner in which it was acquired. It is obvious that a confession is a statement of guilt made by the charged party. However, this has never been held to be a violation of the Fifth Amendment to the United States Constitution.

The prohibition comes into force only when a defendant is tricked or forced into a confession or is forced to take the witness stand during his trial, neither of which are acceptable under the Constitution. The case at bar in no way approaches this type of situation.

The trial court should be affirmed.