**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DARREN BEDWELL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL MERRIWEATHER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1204-CR-159 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Carol Orbison, Judge
Cause No. 49G22-1101-FB-4213

**February 27, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Michael Merriweather (Merriweather), appeals his conviction for Count I, robbery, a Class B felony, Ind. Code § 35-42-5-1; Count II, attempted robbery, a Class B felony, I.C. §§ 35-42-5-1, -41-5-1; Count III, carrying a handgun without a license, a Class A misdemeanor, I.C. §§ 35-47-2-1, -23(c); and Part II of Count III, carrying a handgun without a license, a Class C felony, I.C. §§ 35-47-2-1, -23(c)(2)(B).

We affirm in part and remand in part with instructions.

## ISSUES

Merriweather raises two issues on appeal, which we restate as:

(1) Whether the trial court abused its discretion by admitting pre-trial and in-court identification evidence; and

(2) Whether his abstract of judgment and chronological case summary (CCS) contain clerical errors.

## FACTS AND PROCEDURAL HISTORY

On December 22, 2010, Benny Chavira (Chavira) and Oscar Rodriguez (Rodriguez) waited in the parking lot outside Chavira's apartment building in Indianapolis, Indiana. It was night and the two were heading to a gym. A tan-colored Chevrolet Cobalt automobile pulled up and stopped in front of them. The driver got of the car and Chavira waived to him because he thought the driver was a neighbor. The

driver was dressed in a tan leather coat with patches. The driver went over to Chavira, pointed a gun at his chest, and demanded Chavira give him all that he had.

The parking lot was illuminated solely by a light from the entrance to Chavira's apartment building. The driver was two feet in front of Chavira, and wore a type of ski mask which covered part of the driver's face. However, the driver's ski mask fell off, revealing his face to Chavira. The passenger of the Chevrolet then got out of the car and went over to Chavira, going through his pockets while the driver held the gun pointed at Chavira's chest. The passenger took seventy dollars from Chavira and got back in the Chevrolet along with the driver. The encounter lasted approximately four minutes. The car turned around in the apartment complex parking lot and drove away. Chavira was able to see part of the license plate and found a cell phone that had fallen out of the vehicle when the driver first got out. Chavira called 911 and the police arrived thereafter.

Chavira told the police what had happened and provided the license plate numbers. Rodriguez gave the cell phone to the police. Chavira described the driver as an African-American male, approximately six feet tall, whose face had a five o'clock shadow. Chavira also told police that the driver was wearing sweat pants and a leather jacket with patches.

Indianapolis Metropolitan Police Detective Harry Dunn (Detective Dunn) obtained a search warrant for the cell phone. It was a prepaid cell phone without subscriber identification; however, it contained a number of text messages and incoming calls from a person named Britt. Brittany Lane (Lane) was later identified as Britt and the text

3

messages were between her and a person named Mike. Detective Dunn obtained a list of Chevrolet Cobalt automobiles with license plate numbers similar to Chavira's description. A tan Chevrolet Cobalt was registered to Lane. Lane later told the police that she had dated Merriweather in December 2010. She admitted that she owned a tan Chevrolet Cobalt and often lent it to Merriweather. Finally, she acknowledged sending the text messages on the found cell phone and to calling Merriweather several times on December 21 through 23, 2010.

On December 30, 2010, Chavira met with Detective Dunn and gave a statement, repeating his description of the driver. Detective Dunn thereafter assembled three photo arrays containing six photos each. Merriweather's photo was in one of the photo arrays. On January 9, 2011, when Chavira met with Detective Dunn to review the arrays, Detective Dunn told him that the person involved in the crime may or may not be in the photo arrays. If Chavira should see the person, Detective Dunn instructed him to circle the photo and put his signature and the date below it. Chavira pointed to Merriweather's photo and said that he believed that it was him, but also indicated that he wasn't sure. Detective Dunn told Chavira to circle the photo. Approximately five minutes later, Detective Dunn said, "Good job. You got the right guy." (Transcript p. 101).

On January 20, 2011, the State filed an Information charging Merriweather with Count I, robbery, a Class B felony, I.C. § 35-42-5-1; Count II, attempted robbery, a Class B felony, I.C. §§ 35-42-5-1, -41-5-1; and Count III, carrying a handgun without a license, a Class A misdemeanor, I.C. §§ 35-47-2-1, -23(c). That same day, the State filed Part II

4

of Count III, an enhancement of Count III to a Class C felony based upon Merriweather's prior felony conviction for residential entry. I.C. § 35-47-2-23(c)(2)(B). Prior to trial, Merriweather filed a motion in limine to suppress evidence of the pre-trial identification and to prohibit Chavira from making an in-court identification. The trial court denied the motion.

On February 13-14, 2012, a bifurcated jury trial was held. The State presented testimony from Chavira, Detective Dunn, and Lane. Over Merriweather's objection, Chavira and Detective Dunn testified that Chavira had identified Merriweather from the photo arrays and Chavira identified Merriweather as his assailant in court. The jury found Merriweather guilty as charged on Counts I, II, and III. Thereafter, Merriweather waived his right to a jury trial on Count IIIA. On February 24, 2012, the trial court found Merriweather guilty on Count IIIA.

On March 7, 2012, the trial court held a sentencing hearing. It sentenced Merriweather to fifteen years each on Counts I and II. After merging Count III and Part II of Count III, the trial court sentenced Merriweather to four years. All sentences were to run concurrently. The trial court suspended five years and ordered the last two years served through community corrections, for a total executed sentence of ten years. Merriweather was placed on probation for two years.

Merriweather now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Pre-Trial and In-Court Identification*

Merriweather contends that the trial court abused its discretion by admitting evidence of Chavira's pre-trial and in-court identification of Merriweather. Specifically, he argues that Detective Dunn's comments after Chavira identified Merriweather amounted to an impermissibly suggestive pre-trial identification procedure resulting in a violation of due process of law. We disagree.

The admission or exclusion of evidence is within the sound discretion of the trial court, and we will reverse the trial court's determination only for an abuse of discretion. *Ertel v. State*, 928 N.E.2d 261, 263 (Ind. Ct. App. 2010), *trans. denied*. An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id*.

Due process of law requires suppression of testimony concerning an out-of-court identification when the procedure employed was unnecessarily suggestive. *Wade v. State*, 718 N.E.2d 1162, 1167 (Ind. Ct. App. 1999), *trans. denied*. Otherwise, the defendant is subjected to the unacceptable risk that the identification process was conducted in such a way that it created a substantial likelihood of irreparable misidentification. *Parker v. State*, 698 N.E.2d 737, 740 (Ind. 1998). If under the totality of the circumstances, the reviewing court finds the out-of-court procedures were not impermissively and unnecessarily suggestive, both the evidence of the pretrial lineup and the in-court identification were properly admitted by the trial court. *Wade*, 718 N.E.2d at 1167.

6

The practice of exhibiting a photo array to a witness of a crime in order to obtain evidence of the identity of the perpetrator is, generally, a permissible investigative method. *Bell v. State*, 622 N.E.2d 450, 455 (Ind. 1993), *overruled on other grounds by Jaramillo v. State*, 823 N.E.2d 1187 (Ind. 2005). At trial, Detective Dunn testified regarding the procedure he used to show photo arrays. He explained that arrays are assembled using a computer to randomly select photographs of different individuals. Before showing a victim or a witness a photo array, Detective Dunn records the process and explains to them that "the person involved may or may not be in the photo at all." (Tr. 182). If the victim or witness identifies the person who committed the crime, the photo is circled and signed and dated below the photo. If he cannot identify the perpetrator, Detective Dunn instructs the person to sign and date the side of the photo array to acknowledge that it was shown. Here, Detective Dunn showed Chavira three computer-generated photo arrays containing six photographs each. He specifically told Chavira that the perpetrator may or may not be in the photos. Chavira identified Merriweather, circled his photograph and signed and dated it. We conclude that the foregoing procedure was not unnecessarily suggestive.

Nevertheless, there are two facts that require additional review of the procedures used here. First, Chavira testified that when Detective Dunn called him to come in and view the photo arrays, he said "I caught someone." (Tr. p. 94). When the police tell a witness that a person who has been arrested is among the lineup, this may amount to an impermissibly suggestive procedure. *See Sawyer v. State*, 298 N.E.2d 440, 443-44 (Ind.

7

1973).  Here, however, Detective Dunn testified that he told Chavira that his assailant may or may not be in the photo array.

Next, Merriweather argues that Detective Dunn's post-identification comments following Chavira's identification created a substantial probability of misidentification. When an exhibition of a photo array to a witness is accompanied by verbal communications or includes graphic characteristics which distinguish and emphasize a defendant's photograph in an unduly suggestive manner, the procedure violates due process.  *See Bell*, 622 N.E.2d at 455.  However, comments from police after the pre-trial identification is made are insufficient to conclude that the identification was influenced. *See id.*  Thus, we conclude that Detective Dunn's comment did not influence Chavira's pre-trial identification of Merriweather.

Based upon our review of the testimony and the admitted photo arrays, we cannot say that under the totality of the circumstances that Chavira's out-of-court identification of Merriweather was impermissibly and unnecessarily suggestive and thus conclude that there was no error in the trial court's admission of Chavira and Detective Dunn's testimony related to the photo array or Chavira's in-court identification of Merriweather.[1]

II. *Sentencing Abstract*

---

[1] Even where a pretrial identification procedure is determined to be suggestive, in-court identification is still admissible if the witness has an adequate independent basis for the in-court identification.  *See Flowers v. State*, 738 N.E.2d 1051, 1056 (Ind. 2000).  Here, we have determined that the pre-trial identification procedure was not improperly suggestive.  Thus, we need not determine whether an independent basis supported Chavira's in-court identification of Merriweather.  *See Bell*, 622 N.E.2d at 455.

Merriweather also contends that there is a discrepancy between the trial court's oral sentencing statement and the abstract of judgment. Merriweather argues and the State agrees that the abstract of judgment "does not indicate that the last two years of the ten year executed sentence will be served in the community corrections as the trial court stated at sentencing." (Appellee's Br. p. 9). Merriweather quotes the trial court's oral sentencing statement in support of his argument:

> As for [C]ount one, robbery as a B felony, sir, I sentence you to 15 years. On [C]ount two, attempt[ed] robbery felony B, I sentence you to 15 years, I suspend five. Of the ten years executed sentence, I order that the last two years of that sentence be completed through community correction beginning with work release. I place you on probation for two years. I order as a sentence under [C]ount three, carrying a handgun without a license as a felony C, I order that the misdemeanor, A misdemeanor merged with the felony C and I sentence you to four years executed. I order that all [C]ounts run concurrently.

(Tr. p. 287). In contrast, Merriweather's abstract of judgment and CCS omit mention that the final two years of Merriweather's executed sentence be served in community corrections.

Where an oral and written sentencing statement conflict, we will examine both statements to discern the findings of the trial court. *Murrell v. State*, 960 N.E.2d 854, 860 (Ind. Ct. App. 2012). We will not presume the superior accuracy of the oral statement, but we have the option of crediting the statement that accurately pronounces the sentence or remanding for resentencing. *Id.* It is clear here that the trial court intended Merriweather to serve the final two years of his sentence in community corrections. We therefore conclude that omission of community corrections in the abstract of judgment

9

constitutes a clerical error.  *See McElroy v. State*, 865 N.E.2d 584, 589 (Ind. 2007).  We remand to the trial court with instructions to fix the error.

<u>CONCLUSION</u>

Based on the foregoing, we conclude that the trial court did not abuse its discretion by admitting pre-trial and in-court identification of Merriweather.  However, we conclude that Merriweather's abstract of judgment and the CCS contain clerical errors and remand for correction of his sentence.

Affirmed in part and remanded in part with instructions.

BAKER, J. and BARNES, J. concur